No. 12940

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA, ex rel.,
THE CITY OF TOWNSEND, a municipal corporation,

Relator,

-vs-

D. A. DAVIDSON, INC., a Montana
Corporation,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Patrick F. Hooks argued, Townsend, Montana

For Respondent:

Scribner and Huss, Helena, Montana
William Scribner argued, Helena, Montana

---

Submitted: January 14, 1975

Decided: JAN 3 0 1975

Filed: JAN 3 0 1975

Thomas J. Kearney
                                    Clerk

Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding for declaratory relief under Title 93, Chapter 89, R.C.M. 1947, the Uniform Declaratory Judgments Act.

Relator is a municipality of the state of Montana, duly organized and existing as a municipal corporation under the laws of Montana. Respondent is a Montana corporation which, in the course of its business, purchases for resale bonds issued by special improvement districts with the state of Montana.

On March 5, 1974, by resolution of its city council relator created, within the city, Special Improvement District No. 4 for the purpose of grading streets, replacing existing gravel base course as needed, placing asphaltic surface course, installing storm drainage pipes and inlets as need, all upon the streets and avenues of the special improvement district. Thereafter, on June 27, 1974, relator awarded a contract for the construction of such improvements. Relator city and the contractor intend to proceed with the construction in accordance with the contract when bonds of the special improvement district are sold and the necessary funds are obtained for the financing of the work.

By notice duly given and advertised according to law, relator requested bids for submission to the city council for the purchase of $264,000, par value, of Special Improvement District No. 4 bonds for the financing of such construction. On September 3, 1974, a bid was submitted by respondent and State Bank of Townsend for the purchase of such bonds at par with an accruing interest rate of 7.75% per annum. No other bid was submitted. The bid was conditioned upon the issuance and filing of an opinion of the attorney general of the state of Montana, to the effect that cities and towns could lawfully issue and sell special improvement district bonds bearing an interest rate in excess of 7% per annum. The bid was accepted by the city council and thereafter a contract was entered

into between relator and the bidders, conditioned as aforesaid, providing for the issuance of Special Improvement District No. 4 bonds in the sum of $264,000 bearing interest at the rate of 7.75% per annum, and for the purchase thereof by the bidders at par plus accrued interest to the date of delivery.

Thereafter, on November 27, 1974, the attorney general of the state of Montana issued an opinion stating, in effect, that cities, towns and counties may lawfully issue and sell special improvement district bonds or warrants, bearing an interest rate in excess of 7% per annum if the special assessments paid by the property owners within the district are appropriated for the payment of principal and interest on such bonds or warrants.

Relator was then advised by respondent that, notwithstanding the provisions of their contract and the attorney general's opinion, it would continue to refuse to purchase the bonds for the claimed reason that cities and towns are prohibited by law from issuing or selling special improvement district bonds or warrants bearing an interest rate greater than 7% per annum.

Relator has made diligent effort to secure a purchaser for the bonds at an interest rate of 7% or less but has been unable to do so. By reason thereof, relator is informed and believes that it will be unable to proceed with such construction or to perform its obligations under the construction contract unless respondent performs under the provisions of its contract for the purchase of the bonds.

On information and belief, relator stated in its application for declaratory judgment that for the past several months cities, towns and counties of the state of Montana have been unable to finance needed special improvements in districts created for that purpose because the prevailing bond market will not justify the purchase of special improvement district bonds bearing an interest rate of 7% or less and that the prevailing long term municipal bond interest rates are unlikely to come down in the foreseeable future.

The subject matter of this action is of great and widespread public concern and should be resolved at the earliest possible time. Due consideration of this question in the trial courts and final determination by an appeal to this Court is an inadequate remedy in that delay would ensue before a final decision could be had, making it impossible for cities, towns and counties to proceed with necessary construction of improvements in the forthcoming construction season. There are no disputes of fact and only a single issue of law is involved, namely, whether cities, towns and counties have authority to issue and sell special improvement district bonds and warrants bearing an interest rate in excess of 7% per annum. For these reasons it is appropriate and proper for this Court to accept original jurisdiction of this proceeding to insure a just and speedy determination of the question involved.

The 1971 amendments to the special improvement district laws were a part of a package of amendments relating to interest rates on state, county, city and school district indebtedness. This legislation, House Bill 15, was revised many times before it was finally passed. Sections 2 and 3 of the bill, now codified respectively as sections 79-2602 and 79-2603, R.C.M. 1947, are significant:

> "79-2602. Rate of interest on bonds to be determined by governing bodies---limitations and exceptions. Bonds of a political subdivision shall bear interest at such rate or rates as its governing body shall determine, except that no such rate shall exceed seven percent (7%) except revenue bonds issued under the terms of sections 11-2401 through 11-2414, sections 11-2217 through 11-2221, and sections 11-4101 through 11-4110, R.C.M. 1947, which rate shall not exceed nine percent (9%)."

> "79-2603. Rate of interest on special assessments to be determined by governing bodies---limitations. All special assessments levied by a political subdivision shall bear interest at such rate or rates as its governing body shall determine, except that no such rate shall exceed the greater of seven percent (7%) per annum, or in the event that the special assessments are appropriated for the payment of principal and interest on bonds issued by the political subdivision, <u>the rate of interest on said bonds.</u>" (Emphasis added.)

Section 79-2602, if read alone, would lead one to conclude that all bonds of political subdivisions, except the revenue bonds therein specified, carry a maximum interest rate of 7%. Section 79-2603, with respect to special improvement bonds indicates the contrary by authorizing a greater rate of interest on special assessments in those cases where the special improvement bonds bear a higher rate of interest than 7%. Originally section 2 of House Bill 15 provided for a general maximum rate on all bonds of 8%, except in those cases where the lowest of two or more competitive bids was higher than 8%, (in which event there was no legal maximum). As so originally drawn there was no inconsistency between sections 2 and 3. The exception allowing a legal rate in excess of 8% was, however, deleted from the bill on its first revision in the House, while the underlined portion of section 3 was retained. Thereafter, through a series of amendments, a great number of existing code sections pertaining to interest rates on city, county and school district indebtedness were included in the bill. Some existing code sections were amended to delete all reference to a maximum rate of interest, among those were sections relating to special and rural improvement districts; others were amended by changing the maximum rate of interest. On its final revision, the Senate committee of the whole reduced the general maximum interest rate in section 2 to 7%.

The controversy here involves whether to give some meaning to the underlined portion of section 79-2603, R.C.M. 1947. Relator contends that the retention of the underlined portion indicates a legislative intent that the interest rate on special assessment bonds should be allowed to exceed 7%. Respondent, on the other hand, contends that the underlined portion is redundant and the clear wording of section 79-2602, R.C.M. 1947, should control.

This Court will presume that the legislature would not pass useless or meaningless legislation; and also must harmonize statutes relating to the same subject and/give effect to each. State ex rel.

Dick Irvin, Inc. v. Anderson, _____Mont._____, 525 P.2d 564, 31 St.Rep. 482. We must presume that the legislature had some purpose in mind when it retained the underlined portion of section 79-2603. In order to give that phrase any meaning whatsoever, we must hold in accord with the contentions of relator. Therefore, (1) a municipality or county acting in behalf of a legally formed special improvement district under the provisions of Title 11, Chapter 22, or Title 16, Chapter 16, R.C.M. 1947, may issue and sell bonds or warrants bearing an interest rate in excess of 7% per annum, and (2) the contract between relator and respondent for the purchase of the bonds referred to herein is binding upon the parties, notwithstanding the fact that the bonds are to bear interest at the rate of 7.75% per annum.

Judgment for relator.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.