No. 92-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

WILLARD EARL ARNOLD,

        Plaintiff and Respondent,

   v.

BOISE CASCADE CORPORATION,
a Delaware corporation,

        Defendant and Appellant.

---

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

           David A. Veeder, Veeder & Broeder,
Billings, Montana

        For Respondent:

           K. D. Peterson, Peterson and Schofield,
Billings, Montana

**FILED**

JUL 6 1993

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  January 21, 1993

Decided:  July 6, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Boise Cascade Corporation appeals from a jury verdict and judgment entered in favor of Willard Earl Arnold by the District Court for the Thirteenth Judicial District, Yellowstone County, on July 2, 1992. Arnold was awarded damages of $41,920 for wrongful discharge from employment by Boise.

We affirm.

The following issues are raised on appeal:

1. Was Arnold barred from seeking relief because he failed to file suit within one year as required by the Wrongful Discharge From Employment Act?

2. Did the trial court abuse its discretion when it allowed Arnold to testify concerning the amount of damages he incurred?

3. Did the trial court abuse its discretion by allowing Arnold's counsel to present evidence of damages during summation?

4. Did the trial court abuse its discretion when it refused Boise's proposed jury instruction defining the term "discharge"?

This litigation involved a factual dispute with respect to the time and circumstances surrounding Arnold's termination from employment with Boise.

Arnold was hired by Boise in July 1982 to work at the millwork facility in Billings. In order to provide standard guidelines and personnel policies, Boise provided its employees with a "U.S. Salaried Employee Handbook" which referred to Boise's Corporate Policy Manual.

Of significance to this litigation are the provisions of the Handbook and Policy Manual which provide for "temporary curtailment leave," defined as an unpaid absence caused solely by reduced work availability. Specifically at issue was the company's policy of reinstating an employee who has been placed on temporary leave to the position previously occupied or, if that position is not available, to one that is suitable based on the employee's salary, skills, and experience. The manual states that temporary curtailment leave concludes when six months have elapsed and the employee has not been asked to return to work. It further states: "At the end of six months, the employee will be terminated subject to the provisions of the Termination of Employment Policy, 10.2. Such termination will be considered involuntary, and severance pay provisions apply." The termination provisions referred to require the company to give the employee a written notice of termination or two weeks pay in lieu of that notice, and severance pay based on length of service and salary at the time of termination.

On February 19, 1988, due to a lagging local economy, Arnold was placed on temporary curtailment leave and was told he would probably be recalled in one to two months. By April 1988, when he had not yet been recalled by Boise, Arnold accepted a position with the Gardner Distributing Company at a salary considerably lower than what he was earning at Boise. On April 13, 1988, Arnold went to Boise and requested his vacation pay and funds in his Supplemental Savings and Retirement Plan (SSRP).

It is at this point that each party's version of events varies.

Arnold's representation to the jury was that he always anticipated returning to Boise, because he was led to believe he would have that opportunity when he was temporarily laid off. He took the job with Gardner and requested his vacation pay and SSRP funds because he could not idly sit and wait to be rehired, and needed the money to provide for his family during the interim. He insisted that he never told anyone that he was voluntarily resigning from Boise, and that it was his understanding that if he went back to work for Boise, he could repay the SSRP funds and reinstate the program.

Although six months eventually elapsed, Arnold pointed out that Boise never initiated the involuntary termination procedures as described in the manual which required Boise to give Arnold notice or pay in lieu of notice, and severance pay. Arnold's claim was that the temporary curtailment leave was never terminated, and that Boise had an obligation to rehire him in accord with the company's policies as soon as a suitable position was available. He testified that he made very clear to the management that he was ready, willing, and able to return to Boise whenever he received a call, even if it was just a part-time position.

In contrast, Boise asserted that Arnold voluntarily terminated his employment with the company when he accepted the position at Gardner and requested his vacation and retirement pay. Boise noted that, although Arnold contacted the company frequently during the

4

first two months of lay-off, he never inquired about job possibilities after taking the job with Gardner even though he was aware that some employees were being reinstated. Boise testified that Arnold admitted that he knew SSRP funds could only be paid upon separation from the company, and that, when he elected to continue health care coverage on a self-pay basis, Arnold understood that his health coverage had ended due to termination of employment on April 13, 1988. Thus, it was Boise's contention that Arnold voluntarily terminated employment on that date.

Although Boise asserted that Arnold terminated on a voluntary basis on April 13, 1988, it argued that even if the jury believed otherwise, once six months of temporary leave had elapsed, an involuntary discharge was automatically effective according to the company's policy. In either case, the company contends it was thereafter under no legal obligation to rehire or reinstate Arnold since he was no longer employed by Boise.

In March 1990, Arnold discovered that Boise was ready to fill the position that he had been laid off from two years earlier. When he inquired about the job, he was told he would have to fill out an application and wait for the company to respond. Two to three weeks later he was informed that Boise had hired another applicant to fill the position.

Arnold filed suit ten months later, on January 16, 1991, in which he claimed that he had been wrongfully discharged from employment on or about April 1990, when Boise failed to recall or rehire him in accordance with company policy. He sought damages

5

for loss of wages, fringe benefits and costs, and expenses. The cause of action was based on Montana's Wrongful Discharge From Employment Act, found at §§ 39-2-901 through -914, MCA. As set forth by Arnold, § 39-2-903(2), MCA, defines a discharge to include "failure to recall or rehire," and the act specifies that a discharge is actionable if it was not for good cause or was in violation of the express provisions of the employer's written personnel policy.

A trial was held on June 29, 30, and July 1, 1992. The jury resolved the questions of whether there had been a voluntary discharge, and whether Boise had an obligation to recall or rehire him, in Arnold's favor and against Boise. It found that Arnold had not terminated employment in 1988, but rather had been discharged in 1990 without good cause and in violation of the company's written personnel policy when it failed to recall or rehire him. The jury assessed damages in the amount of $41,920.

Judgment for that amount was entered against Boise on July 2, 1992. From that judgment, Boise appeals.

I.

Was Arnold barred from seeking relief because he failed to file suit within one year as required by the Wrongful Discharge From Employment Act?

Arnold's claim is governed by § 39-2-911, MCA, of the Wrongful Discharge From Employment Act, which states that all actions brought pursuant to this act must be filed within one year after the date of discharge. Boise claims that Arnold voluntarily

6

terminated his employment on April 13, 1988, and the complaint was not filed until January 16, 1991, nearly three years later.

The evidence Boise presented to the jury was that even if Arnold did not know he had been terminated in 1988, the documents forwarded to Arnold, such as the withdrawal of SSRP funds, vacation pay, and the health benefit election, supported the fact that Boise affirmatively discharged him from employment at that time. Boise asserts that the statute cannot run from the time when it refused to rehire Arnold because it had no obligation to do so.

After considering the evidence and testimony, the jury found otherwise. The jury was asked to decide whether a discharge had occurred on or before January 16, 1990, the date one year prior to the time Arnold filed his cause of action. It found that a discharge had not occurred. The jury found that Arnold had not quit his employment with Boise, nor did Boise take the necessary steps to effectuate an involuntary termination prior to that date. Boise appeals this finding and urges this Court to find as a matter of law that Arnold's employment was terminated on April 13, 1988, thus precluding him from stating a claim for relief.

When, and under what circumstances, Arnold was discharged from Boise are questions of fact which were properly presented to the jury. We recently discussed our function in reviewing jury verdicts in *Simchuk v. Angel Island Community Association* (1992), 253 Mont. 221, 833 P.2d 158, and *Silvis v. Hobbs* (1992), 251 Mont. 407, 824 P.2d 1013. In those cases, we held that it is not the function of this

7

Court to agree or disagree with the jury's verdict. Our role is to determine whether there was substantial evidence to support the verdict. Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion, even if the evidence is weak or conflicting. *Silvis*, 824 P.2d at 1015.

We reaffirmed these general principles in *Wisher v. Higgs* (Mont. 1993), 849 P.2d 152, 156, 50 St. Rep. 191, 193, where we stated that when reviewing the record, we examine the facts in a light most favorable to the prevailing party. If conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. *Simchuk*, 833 P.2d at 163.

In this instance, the jury's resolution of the discharge issue was based primarily on its determination of credibility of the witnesses and the weight to be given to specific evidence. Arnold's testimony on this point was corroborated by the admission of some management-level employees that Arnold never actually stated that he was quitting. Furthermore, the evidence suggests that Boise's assumption that Arnold was quitting was largely one of inference. It is evident that the jury chose to believe the evidence presented on Arnold's behalf on this disputed point, and it is not our function to find otherwise, provided there is adequate evidence to support this finding.

Based on our review of the record, we conclude that there was substantial evidence to support the finding that Arnold was not

barred from seeking relief by the statute of limitations. We affirm the jury verdict on this issue.

## II.

Did the trial court abuse its discretion when it allowed Arnold to testify concerning the amount of damages he incurred?

Boise next asserts that the court improperly allowed Arnold to testify concerning his estimation of the damages he incurred. The basis for Boise's objection to this testimony is that Arnold was not trained as a labor economist and had no training or experience in calculating the value of fringe benefits. Boise complains that some of the calculations were admittedly "approximations," and in one instance Arnold retracted a previous statement regarding the value of his benefits, stating he had been mistaken. Boise further protests the fact that Arnold could not produce any documentary evidence to support his assessment of the value of the fringe benefits.

A court's ruling on the admissibility of evidence, which includes a witness's testimony, is subject to an abuse of discretion standard and we will not overturn a court's ruling absent a showing of an abuse of discretion. *Miranti v. Orms* (1992), 253 Mont. 231, 833 P.2d 164.

Section 39-2-905(1), MCA, provides for specific damages to be awarded in a wrongful discharge action, and limits them to lost wages and fringe benefits for a period not to exceed four years from the date of discharge, together with interest. Additionally,

9

interim earnings must be deducted from the amount awarded for lost wages.

After reviewing the record, we note that Arnold testified to the amount he had been earning at Boise, what he had earned in the interim, and documented this by submitting his W-2 tax forms. Arnold also knew the benefits he had received while at Boise and based his testimony on his personal knowledge of what those benefits were worth. The fact that he conceded these were approximations would go to the weight the jury would give to this testimony, rather than its admissibility. There was also evidence from Boise regarding the wages currently being paid for his former position.

Considering the testimony as a whole, we do not find it unreasonable that the court allowed Arnold to testify about his wages and benefits while employed at Boise, and the amounts he earned after the company refused to rehire him. We conclude the court did not abuse its discretion when it determined that Arnold was competent to testify concerning his estimation of damages.

III.

Did the trial court abuse its discretion by allowing Arnold's counsel to present evidence of damages during summation?

Boise contends that, in addition to the inadequacy of Arnold's assessment of damages, the problem was compounded when the court allowed Arnold's counsel to present a written summary of the alleged damages which included an interest rate not in evidence, and a fringe benefit figure that contradicted Arnold's estimate.

10

By allowing this objectionable summation, Boise maintains the court committed prejudicial error relating to the jury's award of damages.

The court's ruling on this evidentiary matter is similarly discretionary and will be upheld absent an abuse of discretion. *Miranti*, 833 P.2d at 166.

After reviewing the pertinent sections of the closing argument in question, we cannot conclude that the figures put forth by Arnold's counsel were totally unsupported by evidence which was before the jury. Moreover, when the attorney for Boise objected to the use of the interest rate it was made clear to the jury that they were not required to use that specific interest rate. We note that the damages verdict that the jury arrived at was its own assessment; it was not the value estimated by Arnold or requested by his counsel. In light of the jury's obvious ability to consider the evidence as a whole and make its own determination of damages, we conclude there was no abuse of discretion when the court allowed the challenged summation.

## IV.

Did the trial court abuse its discretion when it refused Boise's proposed jury instruction defining the term "discharge"?

The District Court has discretion in deciding how to instruct the jury, taking into account the theories of the parties, and we will not overturn that decision absent an abuse of discretion.

11

*Mannix v. Butte Water Company* (Mont. 1993), 50 St. Rep. 691, 699; *Cline v. Durden* (1990), 246 Mont. 154, 164, 803 P.2d 1077, 1083.

Boise contends that the court erred when it refused to give the following offered instruction which directly quoted the definition of discharge under § 39-2-903(2), MCA:

> Discharge is defined as any termination of employment, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason.

Instead, the court instructed the jury that "Discharge includes termination of employment including resignation, failure to recall or rehire." Boise contends the jury had no opportunity to conclude that Arnold was discharged through a different means, at a different time, than the two events specified. The assertion is that when the jury was asked to determine if Arnold was discharged on or before a date one year prior to the time suit was filed, it could have drawn no other conclusion than "no" in light of the definition it was given.

We disagree with this contention. On the basis of the definition it was given, the jury could have concluded that Arnold resigned through voluntary termination of employment on April 13, 1988, as was argued by Boise. Had it so concluded, Arnold would have been precluded from any recovery under this cause of action.

The instruction addressed the types of discharge which were supported by the evidence, and informed the jury of the two theories advanced by the parties--whether there had been a

12

discharge through a voluntary resignation, or a failure to recall or rehire when the company was obliged to do so. It was within the court's discretion to instruct the jury on this matter, and we conclude the court did not abuse its discretion when it refused Boise's request to include the entire statutory definition of discharge.

For the reasons stated, the judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13

July 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


David A. Veeder
Veeder & Broeder
P.O. Box 1115
Billings, MT  59103-1115


K. D. Peterson
Peterson & Schofield
2906 Third Ave. No.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy