No. 95-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOANN R. WERRE and JOHN D. WERRE,

      Plaintiffs, Respondents and
          Cross-Appellants,

   v.

MARGARET R. DAVID, Individually and
as Personal Representative of the
Estate of KENNETH C. DAVID,

      Defendants and Appellants.



MAR 14 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Daniel W. Hileman; Murray & Kaufman, Kalispell,
          Montana (argued)

      For Respondents:

          Joe Bottomly; Bottomly Law Offices, Kalispell,
          Montana (argued)

      For Amicus Curiae:

          Linda Mangel, Attorney at Law, Seattle Washington
          Joan Jonkel, Attorney at Law, Missoula, Montana
          (for Northwest Women's Law Center)

          David R. Paoli, Attorney at Law, Missoula, Montana
          (for Montana Trial Lawyers Association)

                 Submitted:  November 16, 1995

                   Decided:  March 14, 1996

Filed:

_____
          /Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Margaret R. David (Margaret), individually and as personal representative of the Estate of Kenneth C. David (Estate), appeals from the judgment entered by the Eleventh Judicial District Court, Flathead County, on a jury verdict awarding Joann R. Werre (Joann) and John D. Werre (John) damages in the amount of $250,000. Joann cross-appeals, but requests that we not address the issues she raises unless we reverse and remand for a new trial as a result of Margaret's appeal. We affirm and, therefore, deem the cross-appeal withdrawn.

We restate the issues on appeal as follows:

1. Did the District Court err in denying Margaret's motion for a directed verdict on the basis that whether Joann's claim was time-barred pursuant to § 27-2-216, MCA, was a question of fact for the jury?

2. Did the District Court err in concluding that the tolling provisions of § 27-2-216, MCA, include negligence claims based on intentional sexual abuse?

3. Did the District Court abuse its discretion in denying Margaret's motion to edit Dr. Dennis Malinak's deposition testimony to exclude reference to his conversation with Margaret?

4. Did the District Court abuse its discretion in excluding certain evidence regarding Joann and John's marital problems?

5. Did the District Court err in denying Margaret's motion for a directed verdict on the negligence claim against her individually?

2

6.   Did the District Court err in instructing the jury on causation?

7.   Did the District Court abuse its discretion in denying Margaret's motion for a new trial?

Margaret married Ben Carkuff (Ben) in 1945 and they had four children, including Joann. When Joann was approximately six to eight years old, she was sexually abused by Ben's brother, whom she called Uncle Francis, during weekly visits to Ben's parents' home. The abuse by Uncle Francis stopped in 1957 when the family's weekly visits to Joann's paternal grandparents' home ceased after Margaret divorced Ben. Margaret married Kenneth David (Kenneth) in 1957 and they and Margaret's children, including Joann, moved from Minnesota to Kalispell, Montana.

When Joann was approximately twelve to fourteen years old, Margaret asked Kenneth to "give" Joann sex education. She took all of her children except Joann out for ice cream so that Kenneth could be alone with Joann. Kenneth had sexual intercourse with Joann on this occasion. After that incident, Kenneth also fondled Joann several times.

Joann married John when she was seventeen years old. She did not tell anyone about the abuse by either her uncle or Kenneth until 1989, when she told John about Uncle Francis' abuse. John recommended that Joann see Carol Lee (Lee), a clinical social worker, to discuss the abuse.

Lee began counseling Joann in May of 1989. She originally diagnosed Joann as having an adjustment disorder with mixed

3

emotional features. In November of 1989, Lee further diagnosed Joann with post-traumatic stress disorder. She concluded that Joann's mental disorders were caused by both the abuse by Uncle Francis and the abuse by Kenneth and, further, that either abuse could have caused Joann's mental disorders.

Joann confronted Margaret and Kenneth regarding the sexual abuse by Kenneth and Uncle Francis in November of 1989. Kenneth did not deny that he sexually abused Joann. Kenneth died in July of 1990.

In December of 1989, Joann became an inpatient at Glacier View Hospital (Glacier View), where she remained for approximately twenty-two days. During that time, Dr. Dennis Malinak, a psychiatrist, treated her. Dr. Malinak diagnosed Joann with a borderline personality disorder and an adjustment disorder; he later agreed with Lee's diagnosis of post-traumatic stress disorder. Dr. Malinak opined that both the abuse by Uncle Francis and the abuse by Kenneth were causal factors in Joann's disorders and, further, that Kenneth's abuse was a major cause of those disorders.

On September 3, 1992, Joann filed a complaint against Margaret individually and as personal representative of Kenneth's Estate. As subsequently refined in the Pretrial Order, Joann alleged the intentional tort of sexual abuse against Kenneth and intentional or, alternatively, negligent conduct by Margaret in aiding Kenneth's sexual abuse and failing to use due care to protect her. During the jury trial, the District Court directed a verdict in

4

Margaret's favor on Joann's intentional tort claim against her individually. The jury found that Kenneth sexually abused Joann and that Margaret was negligent; it awarded $250,000 in damages. Margaret appeals in both her individual capacity and her capacity as personal representative of Kenneth's Estate. Additional facts are set forth below where necessary for our resolution of the issues.

 1. Did the District Court err in denying Margaret's motion for a directed verdict on the basis that whether Joann's claim was time-barred pursuant to § 27-2-216, MCA, was a question of fact for the jury?

Joann filed this action on September 3, 1992. Margaret contends that the undisputed evidence establishes that Joann discovered that her injuries were caused by the childhood sexual abuse by Kenneth prior to September of 1989. On that basis, she argues that the District Court was required to direct a verdict in her favor as a matter of law under § 27-2-216, MCA.

A directed verdict is proper only when there is a complete absence of any evidence which would justify submitting an issue to a jury, and all inferences which can be drawn from the evidence must be considered in a light most favorable to the opposing party. Pierce v. ALSC Architects, P.S. (1995), 270 Mont. 97, 107, 890 P.2d 1254, 1260 (citing Jacques v. Montana Nat'l Guard (1982), 199 Mont. 493, 649 P.2d 1319). A district court must deny a motion for a directed verdict if substantial conflicts in the evidence exist. Fox Grain and Cattle Co. v. Maxwell (1994), 267 Mont. 528, 533, 885 P.2d 432, 435 (quoting Simchuk v. Angel Island Community Ass'n (1992), 253 Mont. 221, 833 P.2d 1587).

5

Section 27-2-216(1)(b), MCA, provides, in relevant part:

(1) An action based on intentional conduct brought by a person for recovery of damages for injury suffered as a result of childhood sexual abuse must be commenced not later than:

. . . .

(b) 3 years after the plaintiff discovers or reasonably should have discovered that the injury was caused by the act of childhood sexual abuse.

In order for the District Court to have properly denied Margaret's motion for a directed verdict in this regard, there must be evidence of record that Joann did not discover the causal connection between Kenneth's abuse and her mental disorders until after September 3, 1989.

It is true, as Margaret contends, that the record contains evidence indicating that Joann connected Kenneth's abuse with her psychological problems prior to September 3, 1989. On cross-examination Joann testified that she did not tell a male therapist she saw in 1970 about Kenneth's sexual abuse because she distrusted men as a result of that abuse. Joann also conceded on cross-examination that, when she first saw Lee in May of 1989, she made some connection between her need for counseling and her childhood sexual abuse.

However, Joann presented evidence indicating that she did not discover that her mental disorders were connected to Kenneth's abuse until after September 3, 1989. She testified that, although she was always aware that she had been sexually abused, she did not connect her abuse with her psychological problems until November of 1989. Lee opined that Joann began to connect the sexual abuse by

6

Kenneth with her mental disorders after she confronted Margaret and Kenneth in November of 1989. Dr. Malinak testified that, when Joann was hospitalized at Glacier View in December of 1989, she was in the process of connecting her sexual abuse with her mental disorders. Moreover, Herman Androes (Androes), a clinical psychologist and therapist testifying on behalf of Margaret and the Estate, conceded on cross-examination that he agreed with the conclusions of Lee and Dr. Malinak in this regard.

This review of the record demonstrates the substantial conflicts in the evidence regarding when Joann discovered that her injuries were caused by the childhood sexual abuse she experienced, for purposes of applying the time bar contained in § 27-2-216, MCA. It is within the province of the jury to resolve conflicts in the evidence. Barthule v. Karman (1994), 268 Mont. 477, 485, 886 P.2d 971, 976. Therefore, based on the record before us, we conclude that the time at which Joann discovered a connection between Kenneth's sexual abuse and her mental disorders was a question of fact for the jury. Accordingly, we hold that the District Court did not err in denying Margaret's motion for a directed verdict on the basis of § 27-2-216(1)(b), MCA.

> 2. Did the District Court err in concluding that the tolling provisions of § 27-2-216, MCA, include negligence claims based on intentional sexual abuse?

Margaret argues that the plain language of § 27-2-216, MCA, refers only to intentional conduct and, therefore, the statute does not toll the general three-year statute of limitations for negligence actions. Alternatively, she argues that, if the

7

statutory language is ambiguous, the legislative history of § 27-2-216, MCA, establishes the legislature's intent to limit the applicability of the tolling provision to actions against perpetrators of sexual abuse against minors. Under either approach, Margaret contends that § 27-2-216, MCA, includes only claims against perpetrators of intentional sexual abuse and that, because Joann's remaining claim against her individually alleges only that she was negligent, the claim cannot be maintained under § 27-2-216, MCA.

The District Court concluded that § 27-2-216, MCA, includes negligence claims which are based on intentional conduct and that, if the Montana legislature had intended to limit its applicability solely to actions against perpetrators of sexual abuse, it could have done so specifically. We review a district court's conclusions of law to determine if the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

In interpreting a statute, we look first to the plain meaning of the words it contains. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. Clarke, 897 P.2d at 1088. "In the search for plain meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary

8

meaning.'" Gaub v. Milbank Ins. Co. (1986), 220 Mont. 424, 427, 715 P.2d 443, 445 (quoting In re Matter of McCabe (1975), 168 Mont. 334, 339, 544 P.2d 825, 828).

Section 27-2-216, MCA, addresses the time within which a person who has suffered injury as a result of childhood sexual abuse must bring "[a]n action based on intentional conduct . . . ." The meaning of "based on" is determinative of whether § 27-2-216, MCA, includes negligence claims. Margaret does not advance a definition for the words "based on," but her unsupported position appears to be that "based on" means "equal to."

We previously have determined the ordinary meaning of the statutory language "based upon." State ex rel. Snidow et al. v. State Bd. of Equalization et al. (1933), 93 Mont. 19, 17 P.2d 68. State Bd. of Equalization involved a statute under which the value of metals for license tax purposes was to be determined. The statute stated, in relevant part, that "the gross value of the [metal] . . . shall be determined by taking the market value of all merchantable metals or mineral products . . . **based upon** the average quotations . . . in the City of New York . . . during the calendar year immediately preceding." State Bd. of Equalization, 17 P.2d at 71 (emphasis added). Essentially arguing that "based upon" means "equal to," Snidow contended that the tax should have been determined by merely multiplying the New York price of the metals by the number of pounds or ounces of metal produced. State Bd. of Equalization, 17 P.2d at 69. The State Board of Equalization contended that the New York prices should be used as

9

a base for determining Montana values, essentially arguing that "based upon" means a starting point for determination. State Bd. of Equalization, 17 P.2d at 70. We stated that "the ordinarily accepted meaning of the words 'based upon' is an initial or starting point . . . ." State Bd. of Equalization, 17 P.2d at 73. Moreover, we have indicated that "on" and "upon" are synonymous and, thus, interchangeable. Northern Pac. R.R., Co. v. Gas Dev. Co. (1936), 103 Mont. 214, 218, 62 P.2d 204, 205. Thus, we rejected in State Bd. of Equalization an argument similar to Margaret's in this case regarding the plain meaning of "based on."

Our determination in State Bd. of Equalization regarding the ordinary and accepted meaning of "based upon" is consistent with the dictionary definition of "base." "Base" is defined as "that on which something rests or stands: FOUNDATION . . . the point or line from which a start is made in an action or undertaking . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 180 (1971). Accordingly, we conclude that the plain meaning of "based on" is an initial or starting point or foundation.

The legislature affirmatively chose to use the words "based on" in § 27-2-216, MCA. Our role in interpreting statutes is "to ascertain and declare what is in terms or in substance contained therein, not . . . to omit what has been inserted." Section 1-2-101, MCA. We conclude that, under the plain meaning of the language used in § 27-2-216, MCA, an action is "based on intentional conduct" if intentional sexual abuse is the starting point or foundation for the claim.

10

Here, Joann's negligence claim against Margaret would not exist absent the intentional sexual abuse by Kenneth; stated differently, Kenneth's intentional sexual abuse of Joann is the starting point or foundation for Joann's negligence claim against Margaret. Thus, Joann's negligence claim against Margaret is, under the plain meaning of the language in § 27-2-216, MCA, "based on intentional conduct." To accept Margaret's argument that § 27-2-216, MCA, includes only claims for intentional conduct would require us to disregard the express language "based on" contained therein, thus exceeding our judicial role in interpreting statutes. Section 1-2-101, MCA. Since the intentional sexual abuse by Kenneth is the foundation for Joann's negligence claim against Margaret, Joann's claim is within the purview of § 27-2-216, MCA.

Moreover, § 27-2-216, MCA, cannot be read in a vacuum. We must harmonize statutes relating to the same subject matter, giving effect to each. Crist v. Segna (1981), 191 Mont. 210, 212, 622 P.2d 1028, 1029 (citing State ex rel. City of Townsend v. D.A. Davidson, Inc. (1975), 166 Mont. 104, 531 P.2d 370).

Section 27-2-204, MCA, provides the limitations periods for initiating both negligence and intentional tort actions. It provides, in pertinent part:

(1) *Except as provided in 27-2-216* and 27-2-217, the period prescribed for the commencement of an action upon a liability not founded upon an instrument in writing is within 3 years.

. . . .

(3) The period prescribed for the commencement of an action for libel, slander, assault, battery, false imprisonment, or seduction is within 2 years.

11

Section 27-2-204, MCA (emphasis added). Subsection (1) of this statute, which encompasses negligence actions, specifically cross-references the tolling provisions of § 27-2-216, MCA, and thereby engrafts the § 27-2-216, MCA, tolling provision onto the general statute of limitations for negligence actions. To accept Margaret's contention that § 27-2-216, MCA, is limited to claims against perpetrators of sexual abuse would require us to contravene our role in interpreting statutes by omitting from § 27-2-204(1), MCA, the specific cross-reference enacted by the legislature. See § 1-2-101, MCA.

Thus, reading these statutes together buttresses our interpretation of the plain meaning of the language used in § 27-2-216, MCA, on a stand-alone basis. We conclude that § 27-2-216, MCA, is plain, unambiguous, direct and certain and that it is not limited to intentional tort actions against perpetrators of childhood sexual abuse. Accordingly, we hold that the District Court did not err in concluding that the tolling provisions of § 27-2-216, MCA, include negligence claims based on intentional sexual abuse.

3. Did the District Court abuse its discretion in denying Margaret's motion to edit Dr. Malinak's deposition testimony to exclude reference to his conversation with Margaret?

In September of 1994, Joann video-taped Dr. Malinak's deposition pursuant to a notice indicating the potential use of the deposition at trial as perpetuated testimony. During the deposition, Dr. Malinak testified regarding a telephone conversation he had with Margaret while Joann was hospitalized at

12

Glacier View. Specifically, he stated that he "sense[d] [Margaret] was aware that [the sexual abuse] was going to happen and, in fact, that's why she took the kids." Margaret did not object to Dr. Malinak's testimony during the deposition.

Approximately two weeks later, Margaret filed "Defendant's Objections to Testimony of Dr. Dennis Malinak & Motion for Order to Edit Deposition." She contended that Joann's questions were leading, called for a conclusion and called for speculation. Joann responded that, had Margaret objected during the deposition, she could have established a sufficient foundation for Dr. Malinak's testimony.

The District Court denied Margaret's motion to edit Dr. Malinak's testimony. We review a district court's evidentiary ruling to determine if the court abused its discretion. In the Matter of the Seizure of $23,691.00 in United States Currency (Mont. 1995), 905 P.2d 148, 152, 52 St.Rep. 1063, 1065 (citing State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380).

Margaret argues generally on appeal that Dr. Malinak's impressions about whether she knew Kenneth would sexually abuse Joann constitute an inadmissible conclusion as to what was in her mind. As we previously noted, however, Margaret did not object to Dr. Malinak's testimony during his deposition.

Rule 32(d)(3)(B), M.R.Civ.P., addresses the effect of errors and irregularities in depositions. It provides that any error "in the form of the questions or answers, . . . and errors of any kind which might be obviated, removed, or cured if promptly presented,

13

are waived unless reasonable objection thereto is made at the taking of the deposition." Rule 32(d)(3)(B), M.R.Civ.P. Margaret's objections to questions posed and to Dr. Malinak's responses were not made during the deposition as required by Rule 32(d)(3)(B), M.R.Civ.P. We conclude, therefore, that Margaret waived any errors regarding the admissibility of portions of Dr. Malinak's testimony. We hold that the District Court did not abuse its discretion in denying Margaret's motion to edit Dr. Malinak's deposition testimony.

> 4. Did the District Court abuse its discretion in excluding certain evidence regarding Joann and John's marital problems?

Prior to trial, Joann filed a motion in limine to exclude evidence of the marital problems she and John experienced on the basis that it was irrelevant and inflammatory. Margaret responded that the evidence was relevant to issues of causation and damages and that her case would be prejudiced by excluding it.

The District Court granted Joann's motion in limine with regard to evidence that John had an extramarital affair and that Joann had a gun to protect herself from John while staying with her brother prior to her admission to Glacier View. However, the court refused to exclude evidence about whether the marital discord on a stand-alone basis--rather than the sexual abuse--caused, or substantially contributed to, Joann's counseling bills.

Margaret contends that the District Court erred in excluding evidence of Joann's marital discord except on a limited basis. She argues that the court's exclusion of such evidence precluded the

14

jury from determining that Joann's counseling bills were attributable to her marital discord rather than to the sexual abuse. A district court has wide discretion in determining the admissibility of evidence; we review a trial court's exclusion of evidence to determine if the court abused its discretion. Jacobsen et al. v. State (1989), 236 Mont. 91, 94, 769 P.2d 694, 695 (citations omitted).

Relevant evidence is generally admissible at trial. Rule 402, M.R.Evid. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. We have stated that the test of relevance is "whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered." State v. Fitzpatrick (1980), 186 Mont. 187, 207, 606 P.2d 1343, 1354.

Here, Margaret claimed that the excluded evidence--that John had an extramarital affair and that Joann had a gun to protect herself from John--was relevant to the issues of causation and damages. Margaret was attempting to prove through evidence of Joann and John's marital problems that the marital problems were at least a cause of Joann's mental disorders. The excluded evidence arguably has some value in proving that Joann's marital problems contributed to or caused her injuries and in determining her damages.

There is an exception, however, to the admissibility of

relevant evidence. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Rule 403, M.R.Evid.

In Kimes v. Herrin (1985), 217 Mont. 330, 705 P.2d 108, we held that it was an abuse of discretion to admit evidence regarding the claimant's poor home environment on the basis that, although the evidence was relevant under Rule 402, M.R.Evid., no evidence at trial established a medical connection between poor home environment and the claimant's symptoms. Kimes, 705 P.2d at 110. In Kimes, expert witnesses indicated that poor home environment *may* cause symptoms such as those exhibited by the claimant; however, the testimony was not sufficient to establish a medical connection. Kimes, 705 P.2d at 110.

Similarly, in this case, even Margaret's own expert witness did not testify that Joann's marital problems caused her mental disorders. Androes admitted on cross-examination that, while Joann's marital discord caused her some stress, it was not a significant factor in causing her mental disorders. Moreover, since the marital problems were not a significant causal factor, they could not significantly impact on the question of damages. We conclude that, under these facts, it was within the District Court's discretion to exclude the evidence that John had an extramarital affair and that Joann had a gun to protect herself from John prior to her admission to Glacier View as both misleading and more prejudicial than probative under Rule 403, M.R.Evid.

16

Accordingly, we hold that the District Court did not abuse its discretion in excluding this particular evidence regarding Joann's marital problems.

Finally, Margaret's contention that she was precluded from establishing a basis upon which the jury could find that marital discord, rather than sexual abuse, caused Joann's mental disorders and damages ignores the record. On cross-examination, Dr. Malinak testified that a considerable amount of Joann's therapy at Glacier View centered around her and John's marital problems. Lee also conceded on cross-examination that Joann discussed her marital problems, including a possible divorce, during virtually every counseling session and, in addition, opined that John had caused Joann psychological injury by being verbally and physically abusive. Thus, contrary to her argument, Margaret presented substantial evidence that all, or, a portion, of Joann's counseling bills were attributable to marital discord rather than to sexual abuse.

> 5. Did the District Court err in denying Margaret's motion for a directed verdict on the negligence claim against her individually?

Joann contended at trial that Margaret was negligent in that she breached her parental duty of care to protect Joann. Margaret moved for a directed verdict on the basis that Joann failed to present evidence from which a jury could find that she was negligent. The District Court concluded that there was sufficient evidence regarding Margaret's role in Kenneth's abuse of Joann to go to the jury and denied Margaret's motion for a directed verdict.

17

Margaret argues that the undisputed evidence established only that she asked Kenneth to discuss sex education with Joann and that such evidence is insufficient as a matter of law to support a finding of negligence. On that basis, she asserts that the District Court erred in denying her motion for a directed verdict. As discussed above, a directed verdict is proper only where there is a complete absence of evidence justifying submitting the issue to a jury. Pierce, 890 P.2d at 1260 (citing Jacques, 649 P.2d at 1325).

Margaret's "undisputed evidence" argument simply ignores the record before us. Joann testified that, when she confronted Margaret and Kenneth in November of 1989, Margaret admitted having Kenneth have sex with her under the pretext of sex education. Dr. Malinak's video-taped deposition testimony that he sensed from speaking with Margaret that she was aware that Kenneth's sexual abuse of Joann was going to occur corroborates Joann's testimony.

We conclude that there was sufficient evidence to submit the issue of Margaret's negligence to a jury. Accordingly, we hold that the District Court did not err in denying Margaret's motion for a directed verdict on the negligence claim against her individually.

Margaret also argues generally that substantial credible evidence does not support the jury's verdict that she was negligent. Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion and may be based on weak and conflicting evidence. King v. Zimmerman (1994),

18

266 Mont. 54, 60, 878 P.2d 895, 899 (citing Arnold v. Boise Cascade (1993), 259 Mont. 259, 265, 856 P.2d 217, 220). The weight given to the evidence and the credibility of witnesses lie solely within the province of the jury; we will not reweigh conflicting evidence. Thayer v. Hicks (1990), 243 Mont. 138, 153, 793 P.2d 784, 793 (citing Stewart v. Fisher (1989), 235 Mont. 432, 436, 767 P.2d 1321, 1323).

Margaret's substantial evidence argument is based on her contention that portions of Dr. Malinak's testimony were inadmissible, and we have concluded otherwise. Moreover, Joann's testimony that Margaret admitted in 1989 that she "had [Kenneth] have sex with [Joann]" constitutes substantial credible evidence of Margaret's negligence on a stand-alone basis. We conclude that substantial credible evidence supports the jury's finding that Margaret was negligent.

As her final related argument, Margaret contends that Kenneth's intentional sexual abuse of Joann breaks any causal connection between her acts and Joann's injuries and precludes any liability on her part for those injuries as a matter of law. She relies on Azure v. U.S. Health and Human Services (D. Mont. 1991), 758 F.Supp. 1382, and Deeds v. United States (D. Mont. 1969), 306 F.Supp. 348, for the proposition that "where harm is intentionally caused by a third person and is not within the scope of risk created by the defendant's conduct[,]" the third person's intentional act precludes imposition of liability against the defendant.

19

Margaret's reliance on Azure and Deeds is misplaced. Although Margaret correctly states the rule from those cases on intervening, superseding causes, she does not properly apply it due to her continued mischaracterization of the record to the effect that "there was no evidence [that Kenneth's abuse of Joann] was contemplated by [her]."

Causation issues generally present questions of fact; where conflicting evidence is presented at trial, such issues must be decided by a jury. Payne v. Sorenson (1979), 183 Mont. 323, 327, 599 P.2d 362, 365. As discussed above, Joann presented evidence that Margaret knew Kenneth intended to have sexual contact with her in the context of educating her about sex and that Margaret removed her other children from the house for that reason. This evidence is sufficient to raise a fact issue for the jury with regard to whether the harm to Joann caused by Kenneth's intentional acts was within the scope of risk created by Margaret's conduct. On that basis, we conclude that Margaret's argument that Kenneth's abuse of Joann constituted an intervening, superseding cause of Joann's injuries which precluded the imposition of liability on her as a matter of law is without merit.

6. Did the District Court err in instructing the jury on causation?

On behalf of the Estate, Margaret advances a number of arguments under which she contends the District Court failed to properly instruct the jury on causation. A district court has discretion in instructing the jury and we will not reverse the court on the basis of alleged instructional errors absent an abuse

20

of discretion. Cechovic v. Hardin & Assoc., Inc. (Mont. 1995), 902 P.2d 520, 527, 52 St.Rep. 854, 860 (citing Arnold, 856 P.2d at 222). In reviewing jury instructions, we consider the instructions given in their entirety and in connection with the evidence presented at trial. Cechovic, 902 P.2d at 527 (citing Story v. City of Bozeman (1993), 259 Mont. 207, 222, 856 P.2d 202, 211).

Margaret argues that the District Court erred by giving Instruction No. 12, which she contends essentially directed the jury to award Joann damages if it found that Kenneth sexually abused Joann. Margaret contends that the instruction failed to require the jury to find that Kenneth's conduct caused Joann's injuries and resulted in the imposition of strict liability for Kenneth's conduct.

Instruction No. 12 reads as follows:

As to the Estate of Kenneth David, you are instructed that if you find he sexually abused Joann Werre, then you should determine the amount of money that would compensate her for the injuries, if any she received, according to the further instructions I will give you.

While Margaret is correct that this instruction does not require a causation finding, it does refer the jury to the court's other instructions. In this regard, the District Court instructed the jury that "[i]f you find that . . . Kenneth David, knowingly had sexual intercourse with [Joann] . . . you may determine what damages, if any, were caused by his unlawful conduct." Considering these instructions together, as we must (see Cechovic, 902 P.2d at 527), it is clear that the jury was required to determine whether Kenneth's conduct caused Joann any damages. Thus, we conclude that

21

the instructions did not result in the imposition of strict liability for Kenneth's conduct.

Margaret also argues that Instruction No. 12 required the jury "to award all damages arising out of either the Uncle Francis abuse, or the [Kenneth] incident, against [Margaret and the Estate]." Instruction No. 12 does not mention the abuse by Uncle Francis and certainly did not require the jury to award all damages arising from either Uncle Francis' or Kenneth's abuse against Margaret and the Estate. It merely directed the jury to determine whether and, if so, the extent to which Kenneth's abuse caused damages to Joann; it did not foreclose the jury from determining that portions of Joann's damages had another cause. Moreover, the District Court specifically instructed the jury that it could apportion damages by giving Instruction No. 23, which reads as follows:

> Where a preexisting condition has been aggravated by the act sued upon, it is your duty, if possible, to apportion the amount of injury between that caused by the preexisting condition and that caused by the act sued upon . . . .

Thus, it is clear that the court's instructions did not require the jury to award all damages, regardless of the source from which they arose, against Margaret and the Estate.

Margaret also seems to argue that the District Court failed to instruct the jury on her theory that Joann's injuries were caused solely by Uncle Francis' abuse. Her theory was supported at trial by Androes' testimony that, in his opinion, Joann's injuries were caused by Uncle Francis' abuse.

22

However, Margaret did not offer an instruction encompassing her theory that Uncle Francis' abuse was the sole cause of Joann's injuries. Rule 51, M.R.Civ.P., provides that "[n]o party may assign as error the failure to instruct on any point of law unless that party offers an instruction thereon." We conclude, therefore, that Margaret is precluded from assigning error in this regard.

Margaret's final assertion of instructional error is that the District Court erred by failing to instruct the jury to determine whether Kenneth's sexual abuse of Joann was the cause-in-fact and proximate cause of her injuries. The record reflects that Margaret and Joann each proposed a cause-in-fact and proximate cause instruction covering both defendants. Margaret objected to Joann's proposed causation instruction and the court refused it. Margaret then withdrew her own proposed causation instruction covering both defendants and offered a revised instruction covering only her own conduct. The District Court gave Margaret's proposed instruction over Joann's objection.

As we stated above, "[n]o party may assign as error the failure to instruct on any point of law unless that party offers an instruction thereon." Rule 51, M.R.Civ.P. Having failed to offer a causation instruction covering the alleged deficiency of which she now complains on appeal, Margaret's assertion of error is not properly before us.

We hold that the District Court did not err in instructing the jury on causation.

> 7. Did the District Court abuse its discretion in denying Margaret's motion for a new trial?

23

Margaret argues that the District Court erred in denying her motion for a new trial because the jury's $250,000 damage award was not supported by the evidence and was the result of passion and prejudice. Section 25-11-102, MCA, sets forth the grounds for a new trial and provides, insofar as it is relevant here, that

[t]he former verdict . . . may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

. . . .

(5) excessive damages appearing to have been given under the influence of passion or prejudice;

(6) insufficiency of the evidence to justify the verdict . . . .

In considering a motion for a new trial based on an allegation of excessive damages, a district court cannot substitute its judgment for that of the jury unless it appears that the amount awarded is so out of proportion as to shock the conscience. Gibson v. Western Fire Ins. Co. (1984), 210 Mont. 267, 290, 682 P.2d 725, 738. We review a district court's denial of a motion for a new trial to determine if the court abused its discretion. Gibson, 682 P.2d at 738.

With regard to the amount of the jury's verdict, the record establishes the monetary amount of Joann's past counseling bills and her bills from Glacier View. Dr. Malinak testified that Joann was charged $14,240.55 for a twenty-one day stay at Glacier View and that, in his opinion, this was a reasonable charge. He further testified that Joann was charged $900 for "services" during her hospitalization at Glacier View. Lee testified that she charged

24

Joann $50 to $60 for each session and that all of Joann's counseling was related to her childhood sexual abuse. Between May of 1989 and September of 1994, Joann incurred approximately $3,457.50 in counseling bills from Lee. Thus, Joann's counseling and hospitalization bills to the date of trial totalled $18,598.05.

Joann also presented evidence regarding her future need for treatment. Dr. Malinak opined that Joann needs intensive outpatient treatment twice a week for two to four years and that she may require additional inpatient treatment. Dr. Malinak did not opine as to how much Joann's future care would cost. However, he did state that, since Lee had counseled Joann in the past, he would suggest that Joann continue her treatment with Lee. Thus, based on Lee's fee for a counseling session and Dr. Malinak's opinion regarding Joann's future treatment needs, Joann would incur at least $12,480 for two years of counseling or $24,960 for four years of counseling with Lee. This calculation assumes that Lee's fee will not increase within the next two to four years. Moreover, these estimated figures do not include the cost of any future inpatient treatment Joann may require.

The record also contains evidence demonstrating the pain and suffering Joann endured as a result of Kenneth's sexual abuse and Margaret's allowing the abuse to occur. In this regard, we have stated that

> there is no definite standard fixed by law in awarding damages for past or future mental and physical pain and suffering; all that is required is that the jury exercise calm and reasonable judgment in its award.

Rasmussen v. Sibert (1969), 153 Mont. 286, 297, 456 P.2d 835, 841.

25

Here, approximately 35 years passed between Kenneth's sexual abuse of Joann and the trial in this case, during which time Joann has been impacted by the effects of the abuse. Lee opined that Joann's marital conflict, or at least the manner in which she dealt with the conflict, was attributable to her childhood sexual abuse. Joann testified that she felt ashamed and nervous after Kenneth sexually abused her. She further testified that, after Kenneth's abuse, she did not feel safe in her home and felt depressed, worthless and unable to trust others.

We conclude that substantial evidence supports the jury's award of $250,000 and that the award does not shock the conscience. Accordingly, we hold that the District Court did not abuse its discretion in denying Margaret's motion for a new trial.

Affirmed.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

_____
Justices

26