MANOR OF LAKE CITY, INC., Appellee,

v.

Edna E. HINNERS and Dean Hinners, Individually and as Trustee of the Edna E. Hinners Family Trust, Appellants.

Edna E. HINNERS, Counterclaimant,

v.

MANOR OF LAKE CITY, INC., Counterclaim Defendant.

No. 94–1525.

Supreme Court of Iowa.

May 22, 1996.

Jerry C. Estes of Estes Law Offices, Fort Dodge, for appellant.

James L. Kramer and Neven J. Mulholland of Johnson, Erb, Bice & Carlson, P.C., Fort Dodge, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

HARRIS, Justice.

Appellants assign no less than fourteen errors in this appeal in a suit to collect for nursing care. All but one of them are clearly without merit, involving challenges to discretionary rulings in which there was no abuse, rulings on which error was waived or not preserved, or matters controlled by well-settled and clear principles we are unwilling to revisit. Because it would unnecessarily extend this opinion to discuss—or even to list—thirteen of the assignments, we reject them without comment, except to note they have been studied, considered and found lacking any merit.

Only one assignment has merit. Grounded in federal legislation, it assails entry of a personal judgment against a fiduciary. Remaining discussion will relate only to that issue. Because we find the jury should have been instructed regarding the federal legislation, we reverse that part of the trial court judgment. In all other respects we affirm.

Edna Hinners is a quadriplegic. When her husband and a son were killed in a tragic farming accident, there were no other family members in the area to care for her. So Dean Hinners, another son, decided to place her in a nursing home. Dean was trustee of an existing family trust that provided support for Edna. The family farm was the primary trust asset.

Dean arranged for a meeting at the Hinners' farm home with representatives from plaintiff Manor of Lake City, Inc. (a/k/a Shady Oaks Care Center) (Manor) to discuss Edna's medical needs and her possible admission to the Manor. Present were Edna, Dean, Rick Meyer, Manor's administrator, and also Manor's head nurse. At the conclusion of the meeting, and outside Edna's presence, Meyer inquired about payment for services. He mentioned to Dean that the Hinners did not have a good reputation in the community for paying their bills. Dean assured him that payment would not be a problem.

Edna was admitted to Manor in October 1991. At the time Dean signed an admission agreement detailing the services provided, the patient's rights and responsibilities, and the charges and fees. The agreement included a standard agreement-to-pay provision. Dean claims he signed only in his capacity as Edna's fiduciary. The nursing home claims he also signed in his individual capacity.

Dean personally paid Manor for his mother's care through February 1992 but then stopped. When asked about Edna's unpaid

account, Dean said he was applying for title XIX benefits for her. Title XIX of the federal social security Act grants medical assistance to state programs for "families with dependent children and [the] aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services...." 42 U.S.C.A. § 1396 (West Supp.1995). The Iowa department of human services (DHS) administers the program in Iowa.

Dean encountered difficulties preparing Edna's application for aid from DHS and eventually sought an attorney's assistance. The family farm proved to be an impediment to approval. A person must be without assets or income to qualify for title XIX assistance. The farm was saddled with debt, including a special use federal tax estate lien of $70,400 that would not expire until 1996. *See* 26 U.S.C.A. § 2032A (West Supp.*1995*). Dean asserted this reduced Edna's interest in the land to $13,638 so the farm had little equity. When DHS disagreed, other options were explored. One was to sell the farm, pay the additional federal estate tax, then pay other creditors until the remaining funds were exhausted. Edna rejected this plan because she wanted the farm to remain in the family. It was decided instead, with

Edna's approval, that Dean would purchase the farm.

One of the hotly contested issues at trial concerned the appropriateness of the price Dean agreed to pay for the farm. It is enough for our purposes here to mention only that ample evidence supported the jury's finding that it was grossly inadequate, and there was no error in the trial court judgment setting aside—as fraudulent—the transfer of the farm from Edna to Dean.

■ I. Among the recoveries allowed in accordance with the jury verdict was one against Dean personally for breach of contract. Dean argues that, as to him, the nursing home's contract claim should have been barred as a matter of law because the contract required a third-party guarantee in violation of federal law. In the alternative, he claims the trial court should have instructed the jury concerning the federal law's prohibition against third-party guarantees in nursing home contracts. Manor requires execution by a resident or responsible party of the standard admission guarantee agreement [1] that it presented Dean.

Section 1396r of the social security Act lists a number of requirements for nursing facilities. 42 U.S.C.A. § 1396r (West Supp.

---

1. The contract provision in question appears as follows:

### VIII. YOUR ACKNOWLEDGMENT

By signing this agreement, you agree to abide by all of the provisions contained in this contract. You acknowledge that you have received and read this contract, your rights outlined in a separate document, and our rules, regulations, and policies outlined in Attachment A. You understand this agreement and the Attachments. Your questions have been answered. You have been given the opportunity to consult your own attorney or to have another person with you while this contract was discussed. This agreement shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the care center and resident.

SHADY OAKS CARE CENTER:

By: //s// Susan M. True

//s// Dean Hinners

(Resident or Responsible Party)

Date: 10-14-91

#### ACKNOWLEDGMENT BY RESPONSIBLE PARTY

The Responsible Party agrees to be bound in his or her individual capacity by all of the terms and conditions of the Agreement pertaining to the Resident. In the event the Responsible Party also executes this Agreement as agent for the Resident, the Responsible Party further certifies that he or she is the duly authorized agent of Resident with full authority to execute this Agreement for or on behalf of the Resident and to bind the Resident to all of its terms and conditions.

SHADY OAKS CARE CENTER:

By: //s// Susan M. True

Responsible Party:

//s//Dean Hinners

(Signature)

Date: 10-14-91

1995). Included is a provision dealing with admissions policies that states:

(A) Admission.

With respect to admission practices, a nursing facility must—

. . . .

(ii) not require a third-party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility. . . .

§ 1396r(c)(5)(A)(ii). The provision, however, goes on to explain:

(B) Construction.

(ii) Contracts with Legal Representatives.

Subparagraph (A)(ii) shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care.

*Id.* § 1396r(c)(5)(B)(ii). The Iowa General Assembly refers to this federal mandate in Iowa Code section 249A.19 (1995) which requires DHS to adopt rules to assess penalties against health care facilities for noncompliance with the federal statute.

■ It was of course entirely permissible under § 1396r(c)(5)(B)(ii) for Manor to require an individual who has legal access to a resident's income to tender payment from that resident's income for the care rendered. This is exactly what the nursing care contract's responsible-party clause properly contemplates. Manor's form agreement however goes further when it causes the signing party to become personally liable. This extension clearly violates federal law if it was a condition of admission.

■ II. It might be claimed that Dean waived his right under section 1396r(c)(5)(A)(ii) and voluntarily agreed to become personally liable for Edna's debt to the nursing home. A waiver is "[t]he intentional or voluntary relinquishment of a known right. . . ." Black's Law Dictionary 1580 (6th ed. 1990). Manor makes some claim that the personal liability agreement here was not presented to Dean as a requirement, but that he signed it voluntarily. The burden of proof on such an assertion would be on Manor. See Iowa R.App.P. 14(f)(5) (burden of proof on an issue ordinarily on party who would suffer loss if issue not established).

Manor failed to make out a jury question on this affirmative defense. There was no evidence from which a jury could find Dean voluntarily surrendered a known right. Reversal is required.

The case must be remanded for entry of judgment in favor of Dean on Manor's claim of personal liability. In all other respects the judgment of the trial court is affirmed. Tax costs one-half to Manor and one-half to Dean.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**