(203 P.3d 4)
No. 100,095

PIONEER RIDGE NURSING FACILITY OPERATIONS, L.L.C.,
*Appellant*, v. RANDY ERMEY, *Appellee*.

Opinion filed March 6, 2009.

*Pamela L. Smith*, of Midwest Health Management, Inc., of Topeka, for appellant.

*Emily A. Donaldson*, of Stevens & Brand, L.L.P., of Lawrence, for appellee.

Before ELLIOTT, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Pioneer Ridge Nursing Facility Operations, L.L.C. (Pioneer), appeals from the trial court's judgment dismissing its collection action against Randy Ermey. The trial court held that Pioneer Ridge had failed to state a claim against Ermey. Ermey signed a promissory note with Pioneer for his mother's care. When Ermey neglected to make the payments under the note as promised, Pioneer sued Ermey. Ermey moved to dismiss the action. The trial court agreed, dismissing the action based on the Nursing Home Reform Act and on a failure of consideration to support the note. Because we are unable to state with certainty the untenability of Pioneer's position, we determine that Pioneer's petition should not have been dismissed for a failure to state a claim. Accordingly, we reverse and remand.

On February 21, 2006, Ermey's mother, Neva Ermey, executed a general durable power of attorney appointing Ermey as her attorney-in-fact, giving him legal access to her income and resources. Neva was then admitted to Pioneer, where she resided from February 22, 2006, until her death on June 25, 2006.

Because Neva's status at the time of her admission to Pioneer was "Medicaid eligibility pending," Neva was originally classified as a "private pay" resident. As a result, she was responsible for paying for her own care. Although eventually approved for Medicaid assistance, Neva incurred $13,424.99 in nursing care expenses during her stay as a private pay resident.

On May 10, 2006, Pioneer sent Neva a notice of discharge because she had not paid on her private pay account. On June 9, 2006, Neva received approval for Medicaid assistance, and she was not discharged from Pioneer.

On June 13, 2006, Ermey met with Pioneer staff to discuss Neva's private pay account balance; Ermey signed the promissory note agreeing to pay the $13,424.99 balance in installment payments. Both parties agree the promissory note was signed. Nevertheless, Ermey contends that Pioneer made Neva's continued stay at Pioneer conditional on his signing the promissory note.

Neva died on June 25, 2006, less than 2 weeks after Ermey signed the promissory note. On July 13, 2006, Ermey's counsel sent Pioneer a letter telling Pioneer that Neva probably died without assets. Moreover, the letter reminded Pioneer that federal law prohibited a third-party guarantee of payment as a condition of continued stay at a nursing facility. Pioneer responded by sending Ermey two bills—one for $13,424.99 (effectively accelerating the private pay account debt as provided for in the promissory note agreement) and the other for $632 (for non-Medicaid covered expenses incurred between June 9 and June 25, 2006).

On October 31, 2006, Pioneer sent another billing for $623 (the discrepancy was not explained.) On November 10, 2006, Ermey sent Pioneer a $623 check in an attempted accord and satisfaction; however, Pioneer returned the check to Ermey within 90 days of receipt. Ermey made no further payments on the debt, and on February 8, 2007, Pioneer brought this action against Ermey.

Ermey moved to dismiss, and the trial court granted the motion on two grounds. First, the court found that Pioneer was prohibited from personally requiring Ermey to guarantee payment as a condition of his mother's continued stay at its facility under the Nursing Home Reform Act. The court found that, as Neva's attorney-in-fact, Ermey was required to pay for Neva's nursing care services only from his mother's income and resources, not his own. Moreover, in carrying out his fiduciary responsibility to his mother, this fiduciary responsibility did not make him personally responsible for her nursing care charges, even valid ones, incurred by her. Second, the trial court found that the promissory note was signed without consideration because (1) Pioneer was prohibited from discharging Neva because of her protected Medicaid recipient status, (2) Ermey did not have personal liability for Neva's nursing care expenses, and (3) Pioneer did not give Ermey anything in exchange for signing the promissory note.

*Did the Trial Court Err in Granting Ermey's Motion to Dismiss for Failure to State a Claim?*

"When a district court has granted a motion to dismiss for failure to state a claim, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom. The appellate court then decides whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed. *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007)." *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008).

## A. NURSING HOME REFORM ACT

Congress enacted the federal Nursing Home Reform Act (NHRA) as part of the Omnibus Budget Reconciliation Act of 1987. See Pub. L. No. 100-203, 101 Stat. 1330-160-221 (codified, in large part, at 42 U.S.C. § 1395i-3 [2007] and 42 U.S.C. § 1396r [2007]). Under the NHRA, skilled nursing facilities (including nursing homes) accepting Medicare and Medicaid assisted residents are governed by the NHRA. See 42 U.S.C. § 1396a(28)(A) (2007); 42 U.S.C. § 1396r(b)-(d); see generally 42 U.S.C. § 1395 (2007).

According to the NHRA, skilled nursing facilities cannot "require a third party guarantee of payment to [its] facility as a condition of admission (or expedited admission) to, or continued stay in, [its] facility." 42 U.S.C. § 1395i-3(c)(5)(A)(ii); 42 U.S.C. § 1396r(c)(5)(A)(ii). Nevertheless, this restriction does not prevent "a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." 42 U.S.C. § 1396r(c)(5)(B)(ii); see 42 C.F.R. 483.12(d)(2) (2009).

In this case, Pioneer clearly had the right to require Ermey to sign the promissory note because he was Neva's attorney-in-fact, which obligated him to use Neva's income and resources to reimburse Pioneer on the past due account. Furthermore, although Kansas has not directly addressed this issue, other states have allowed breach of contract actions in cases involving the fraudulent transfer of assets from a Medicaid recipient to an individual contractually bound to pay a skilled nursing facility according to a contract signed under 42 U.S.C. § 1396r(c)(5)(B)(ii). See, *e.g.*, *Manor of Lake City, Inc. v. Hinners*, 548 N.W.2d 573 (Iowa 1996); *Putnam Nursing & Rehab. Center v. Bowles*, 239 App. Div. 2d 479, 658 N.Y.S.2d 57 (1997).

This brings us to our current issue: Is it permissible for a skilled nursing facility regulated under the NHRA to obtain a third party's *personal* payment guarantee if it does so in a way that does not make a resident's admission, or continued stay, at its facility conditional on a resident's ability to obtain a third-party guarantor? Although Kansas has not addressed this issue, some states have allowed skilled nursing facilities to obtain third-party guarantees when they are *voluntarily* given. See, *e.g.*, *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 58 Cal. Rptr. 2d 89 (1996); *Manor of Lake City, Inc.*, 548 N.W.2d 573. These courts reason that "had Congress intended to forbid third party guarantees under any circumstances, . . . it would have said so." 50 Cal. App. 4th at 646. Furthermore, no court has held that the NHRA requires disclosure on the part of a skilled nursing facility to obtain a third-party guar-

antee. In his brief, Ermey argues that the *Podolsky* court's analysis of 42 U.S.C. § 1396r(c)(5)(B)(ii) included an extensive disclosure and waiting period requirement. Nevertheless, Ermey cites *Podolsky* out of context: the *Podolsky* court was clearly discussing the effect of California's Business and Professions Code on obtaining a third party's personal guarantee to pay for another's nursing home expenses—not its interpretation of requirements imposed under the NHRA. See 50 Cal. App. 4th at 647-56.

As a skilled nursing facility accepting Medicaid recipients, Pioneer was required to comply with the NHRA in its dealings with Neva and with Ermey as her attorney-in-fact and third-party guarantor. Specifically, Pioneer was prohibited from threatening to discharge Neva in order to coerce Ermey into personally guaranteeing payment for Neva's nursing care expenses. Nevertheless, in its response to Ermey's motion to dismiss, Pioneer made the following assertions:

"11. The resident's stay at the facility from February 26, 2006, through June 9, 2006, did not qualify for Medicaid due to a 'transfer or property penalty' and as such was deemed a private pay stay.

"12. The resident was sent a discharge letter on May 10, 2006, because of the outstanding private pay balance. When the resident qualified for Medicaid on June 9, 2006, however, the discharge was abandoned.

"13. The defendant signed the note to make payments on June 13, 2006, after discussions with the Regional Director regarding payment of the private pay arrearages.

"14. The note was signed after the resident's discharge was withdrawn, thereby eliminating the argument the note was signed as a condition of the resident's continued stay at the facility."

Paragraphs 12 and 14 of Pioneer's response created a factual question regarding whether Ermey's signing of the promissory note was a condition precedent to Neva's continued stay at the facility.

In *Rector*, our Supreme Court stated that disputed issues of fact cannot be settled or determined on a motion to dismiss for failure to state a claim upon which relief can be granted:

"In addition, we have observed that factual disputes cannot be resolved or decided on a motion to dismiss for failure to state a claim. Judicial skepticism must be exercised when the motion is made before the completion of discovery. Under Kansas' notice pleading, the petition is not intended to govern the entire

course of the case. Rather, the ultimate decision as to the legal issues and theories on which the case will be decided is the pretrial order. *Halley v. Barnabe,* 271 Kan. 652, 656-57, 24 P.3d 140 (2001). A motion to dismiss typically is filed early in a case, when many of the facts have not yet been discovered and legal theories may be in flux. *ARY Jewelers v. Krigel,* 277 Kan. 27, 38, 82 P.3d 460 (2003)." 287 Kan. at 232-33.

Moreover, Kansas currently follows a notice pleading system. Plaintiffs do not have to establish all possible legal theories in their initial petition so long as it provides enough facts to establish that the plaintiff is entitled to relief. A petition that can support a cause of action based on any theory is sufficient to survive a motion to dismiss. *Noel v. Pizza Hut, Inc.,* 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991).

Next, we consider that part of the trial court's holding that stated: " 'Pioneer Ridge was prohibited [by NHRA] from personally requiring defendant to guarantee payment as a condition of his mother's admission or continued stay at its facility.' " This statement of the trial court is correct. Nevertheless, the trial court's holding fails to account for the fact that Ermey could have *voluntarily* made himself responsible for any valid charges incurred by his mother. See *Podolsky,* 50 Cal. App. 4th at 646; *Manor of Lake City, Inc.,* 548 N.W.2d at 576 (The court considered whether a son had waived his rights under 42 U.S.C. § 1396r(c)(5)(A)(ii) not to be required to become personally liable for his mother's nursing home expenses as a condition of her admission to the facility and had voluntarily agreed to become personally liable for her debt to the nursing home.).

When a written agreement is ambiguous, such as whether Pioneer *voluntarily* or *involuntarily* obtained Ermey's signature on the promissory note, facts and circumstances existing before and connected with the signing of such contract are competent to clarify the intent and purpose of the agreement. See *Skelly Oil Co. v. Savage,* 202 Kan. 239, 248, 447 P.2d 395 (1968). Here, because a factual question existed whether Ermey's signing of the promissory note was a condition precedent to his mother's continued stay at the facility, we determine that the trial court erred in its interpretation of the NHRA.

## B. CONSIDERATION

In its decision, the trial court held that the promissory note was signed without consideration because (1) Ermey did not have personal liability for Neva's nursing care expenses; (2) Pioneer was prohibited from discharging Neva because of her protected Medicaid recipient status; and (3) Pioneer did not give Ermey anything in exchange for signing the promissory note.

First, because a question of fact existed regarding whether Ermey had voluntarily signed the promissory note, as previously discussed, the trial court incorrectly held that Ermey had no personal liability for Neva's nursing care expenses.

Second, the trial court correctly asserts that Pioneer was prohibited from discharging Neva. Under the NHRA, a skilled nursing facility must also permit its residents to remain in its facility and may only discharge its residents under very limited circumstances, such as when a resident fails to pay for his or her stay at its facility. 42 U.S.C. § 1396r(c)(2)(A)(v). Furthermore, "[f]or purposes of [42 U.S.C. § 1396r(c)(2)(A)(v)], in the case of a resident who becomes eligible for [Medicaid] assistance . . . after admission to the facility, only charges which may be imposed under [42 U.S.C. § 1396r are] allowable." 42 U.S.C. § 1396r(c)(2)(A). In other words, when an individual originally admitted as a "private pay" resident later qualifies for Medicaid assistance, the individual cannot be discharged for failing to pay the debt he or she has incurred as a "private pay" resident. Under the NHRA, the individual can only be discharged for "failing to pay" certain permitted Medicaid charges. See generally 42 U.S.C. § 1396r.

In this case, Neva became Medicaid eligible before Ermey met with Pioneer staff and agreed to sign the promissory note. Consequently, when Ermey signed the promissory note, Pioneer did not have the authority to discharge Neva for failing to pay on her past due "private pay" account nor the authority to discharge her for any of the other reasons. See 42 U.S.C. § 1396r(c)(2)(A) (listing those circumstances in which a skilled nursing facility may transfer or discharge a resident). Nevertheless, Neva's Medicaid eligibility was not fatal to Pioneer's argument that the promissory note was supported by consideration.

This brings us to the trial court's third reason: failure of consideration. Kansas courts have long held that a party's forbearance to sue can constitute valid consideration sufficient to support a contract. See, *e.g.*, *Mitchell v. Miller,* 27 Kan. App. 2d 666, 672, 8 P.3d 26 (2000). Furthermore, " '[a]n extension of the time of payment of an obligation constitutes in legal effect a forbearance to sue and . . . is a sufficient consideration for a [third-party] guaranty of the obligation.' 38 Am. Jur. 2d, Guaranty § 47, p. 1051." *Ryco Packaging Corp. v. Chapelle Int'l., Ltd.,* 23 Kan. App. 2d 30, 38, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997). In this case, Neva's private pay account was past due and the promissory note provided Neva, through Ermey as her attorney-in-fact, an extension of time to pay on the past due account. Consequently, Pioneer asserts in its brief that the promissory note was based on a forbearance to sue, which furnished sufficient consideration to support the note.

Nevertheless, under Kansas law, " ' "forbearance to press [a claim] is not a sufficient consideration if there is *no possibility of enforcement and collection,* [which makes] both the claim and the forbearance valueless." [Citation omitted.]' " 23 Kan. App. 2d at 40 (quoting *State ex rel. Ludwick v. Bryant,* 237 Kan. 47, 52, 697 P.2d 858 [1985]). Ermey contends that the promissory note he signed was not supported by adequate consideration because Neva was insolvent, as evidenced by her Medicaid status, and therefore Pioneer could not hope to collect the debt from Neva and so its claim and forbearance was valueless and could not furnish consideration sufficient to support the promissory note. Yet, this begs the question.

The fallacy of begging the question occurs when a claim is dependent on another claim that is implicitly assumed but has not been established in the argument. To illustrate, Ermey argues that Neva was insolvent when he signed the promissory note because she had qualified for Medicaid assistance. The premise offered to justify the conclusion (Neva's insolvency) implies it (Neva's Medicaid status), but there is no independent evidence showing what, if any, financial resources Neva had when the promissory note was signed. The mere fact that Neva had qualified for Medicaid assis-

tance did not show that she would have been unable to make the agreed payments under the promissory note.

Finally, there seems to be a judicial attitude, due in part to the concept of notice pleadings under K.S.A. 60-208(a)(1), that pleadings are not a good mechanism for screening cases, especially when a better screening device is available: the motion for summary judgment. This reasoning applies to the present case.

K.S.A. 60-208(a)(1) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Pioneer stated in its petition that "[o]n or about June 13, 2006, *for valuable consideration,* Defendant executed and delivered a promissory note to Plaintiff for the principal sum of $13,424.99." (Emphasis added.) "A rule of liberal construction applies when judging whether a claim has been stated." *Montoy v. State,* 275 Kan. 145, 148, 62 P.3d 228 (2003). As stated earlier, Kansas courts will not sustain a motion to dismiss unless it seems almost inconceivable that, under the pleadings, the plaintiff could produce evidence justifying some form of relief. *Noel v. Pizza Hut, Inc.,* 15 Kan. App. 2d at 231. Pioneer's petition and response to Ermey's motion to dismiss was sufficient to survive the motion to dismiss.

Reversed and remanded.