RENDERED:  OCTOBER 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1190-MR

CHRISTY ROBERTS												APPELLANT

v.				APPEAL FROM BULLITT CIRCUIT COURT
				HONORABLE RODNEY D. BURRESS, JUDGE
				ACTION NO. 19-CI-00689

MT. WASHINGTON HEALTH CARE,
LLC															APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

JONES, JUDGE:  Christy Roberts appeals an August 18, 2020 judgment of the

Bullitt Circuit Court in favor of Mt. Washington Health Care, LLC, (appellee)

representing the unpaid balance of a promissory note.  She claims the underlying

promissory note was illegal, and that it otherwise included an improper rate of

post-judgment interest.  Upon review, we affirm in part, vacate in part, and remand as set forth below.

## I. BACKGROUND

In September 2018, Erma Basham was admitted to Green Meadows, the appellee's long-term care nursing facility; from all indications of record, this is where Basham continues to reside.  In March 2019, Basham's application for Medicaid benefits was approved, and there is no dispute that Medicaid paid for Basham's care and treatment at Green Meadows retroactively to January 1, 2019.  Prior to the approval of her application, however, Basham had been considered a private-pay resident of the facility, and her expenses between her admission date and February 12, 2019 had accumulated to $34,742.26.

The date of February 12, 2019 is significant because it is the date Basham's daughter, Christy Roberts, executed a promissory note in favor of the appellee.  The relevant substance of the note provided:

> I Christy Roberts WILL PAY $750.00 PER MONTH ON
> Erma Basham [sic] OUTSTANDING BALANCE OF
> $34,742.26 BY THE 10TH OF EACH MONTH.  I
> WILL CONTINUE TO PAY THIS AMOUNT TO
> GREEN MEADOWS HEALTHCARE CENTER UNTIL
> ACCOUNT [sic] IS PAID IN FULL.
>
> TELEPHONE CONVERSATION DATE:  2-12-19
> RESPONSIBLE PARTY:  Christy Roberts

Roberts later defaulted on her obligation under this note after making only one payment of $750, and the appellee filed suit against her in Bullitt Circuit Court on July 10, 2019 to collect $22,797.26 – what the appellee alleged was the remaining balance of the promissory note, minus what Medicaid had paid on Basham's account retroactive to January 1, 2019. Afterward, Roberts responded by asserting only one defense; namely, she contended the appellee could have sought partial or complete payment for her mother's outstanding balance from Medicaid, rather than herself.

This matter eventually proceeded to a bench trial, and it was later resolved by way of an August 18, 2020 judgment in which the circuit court made the following salient determinations: (1) Roberts had executed a valid promissory note in favor of the appellee; (2) the outstanding balance of the note was the amount the appellee had alleged; (3) Roberts' sole defense lacked merit, as she "neither present[ed] affirmative evidence supporting her claim nor [did] she present the court with a specific sum she believe[d] she should owe as a result"; and (4) the appellee was accordingly entitled to judgment against Roberts in the amount of "$22,797.26, with interest thereon at the rate of 12% per annum[.]" This appeal followed.

## II. ANALYSIS

In her appellate brief, Roberts concedes that the arguments she now wishes to assert were not raised before the circuit court or otherwise preserved. Echoing that notion, the appellee has moved this Court to strike her brief and dismiss her appeal. *See* Kentucky Rule of Civil Procedure (CR) 76.12(8)(a); *see also Osborne v. Pepsi-Cola*, 816 S.W.2d 643, 645 (Ky. 1991), *superseded by statute on other grounds as stated in Smith v. Dixie Fuel Co.*, 900 S.W.2d 609 (Ky. 1995) (it is a "fundamental concept that one waives error at the trial level by failing to properly and timely object or otherwise bring the error to the attention of the trier of fact.").

Nevertheless, we will consider Roberts' arguments to an extent,[1] and by separate order have further denied the appellee's motion to strike her brief, on the ground that Roberts invokes CR 61.02 and requests[2] palpable error review. Under that rule,

---

[1] Roberts has also appended a document to the third tab of her appendix that was not part of the record below (*i.e.*, a "final order of summary reversal" which, purportedly, is from the Cabinet for Health and Family Services and relates to Basham's application for social security benefits). To be clear, palpable error review entails review of *arguments* not adduced below, not *evidence* that was never adduced. Accordingly, this document will not be considered. *See Kindred Nursing Centers Ltd. P'ship v. Leffew*, 398 S.W.3d 463, 468 n.5 (Ky. App. 2013) ("We will not consider evidence the circuit court had no opportunity to examine."); *see also* CR 76.12(4)(c)(vii) (clarifying that "materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs.").

[2] Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review "unless such a request is made and briefed by the

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Further elaborating upon this rule, the Kentucky Supreme Court has explained that to qualify as "palpable error,"

[A]n error "must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). "Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it *sua sponte*." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017).

*Nami Res. Co. v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018).

Considering that standard, Roberts' first argument is that her February 12, 2019 promissory note was unenforceable due to *illegality*. Before delving into the substance of her argument, we pause to note there is an ostensible contradiction in the law regarding *when* illegality must be raised. It is a basic principle of contract law that a court "may refuse to enforce a contract on grounds of illegality where the contract has a direct objective or purpose that violates the federal or a state Constitution, a statute, an ordinance, or the common law." *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005) (citation omitted). It has also been

---

appellant." *Jenkins v. Commonwealth*, 607 S.W.3d 601, 613 (Ky. 2020) (quoting *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008)).

-5-

held that "a contract is void *ab initio* if it seriously offends law or public policy," *see Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002); and also, that the court "*sua sponte* will refuse to enforce a contract against public policy." *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 821 (Ky. App. 2008) (quoting *Dodd v. Dodd*, 278 Ky. 662, 129 S.W.2d 166, 169 (1939)).

However, despite being associated with phrases such as "void *ab initio*" and "*sua sponte*," "illegality" remains an *affirmative defense*. CR 8.03. "As a general rule, a party's failure to timely assert an affirmative defense waives that defense." *Rose v. Ackerson*, 374 S.W.3d 339, 345 (Ky. App. 2012) (internal quotation marks and citations omitted). And, Kentucky law tolerates the waiver of certain illegality arguments. *See, e.g.*, *Diaz v. Goodwin Bros. Leasing, Inc.*, 511 S.W.2d 680, 681 (Ky. 1974) (argument that guaranty was illegal deemed waived because not affirmatively pled); *Crowder v. Stinson*, 401 S.W.2d 761, 762 (Ky. 1966) ("Appellant's answer does not affirmatively or at all plead illegality of the contract."); *Brand v. Howell*, No. 2003-CA-000972-MR, 2004 WL 1229265, at *3 (Ky. App. Jun. 4, 2004)[3] ("We conclude the defense of illegality based on an alleged illegal contingent fee contract was waived.").

---

[3] We cite *Brand* for purposes of illustration only, not as persuasive authority pursuant to CR 76.28(4)(c).

That said, any ostensible contradiction regarding when "illegality" must be raised is resolved by the palpable error review standard itself, which, as stated, only concerns errors that are "easily perceptible, plain, obvious and readily noticeable[,]"[4] and that affect "the substantial rights of a party."[5] *See, e.g.*, *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 701 (6th Cir. 2019) (applying Kentucky law in this context, and declining to raise *sua sponte* the illegality of an agreement where the agreement in question did not "contemplate criminal activity or the commission of a tort[,]" and the parties' inclusion of an offending provision did not indicate they intended "to willfully contravene the law.").

Keeping that in mind, we now turn to the substance of Roberts' illegality argument. Generally speaking, nursing homes that accept residents whose charges will be paid in whole or in part by Medicaid are governed by the federal Nursing Home Reform Act (*see* 42 United States Code (U.S.C.) § 1396r), and federal and state regulations (*see* 42 Code of Federal Regulations (C.F.R.) Part 483; *see also* 902 Kentucky Administrative Regulation (KAR) 20:300).

Relevant to Roberts' illegality argument, the federal statute provides that "a nursing facility must . . . not require a third party guarantee of payment to

---

[4] *Brewer*, 206 S.W.3d at 349.

[5] CR 61.02.

the facility *as a condition* of admission (or expedited admission) to, or continued stay in, the facility[.]" 42 U.S.C. § 1396r(c)(5)(A)(ii) (emphasis added). Kentucky has adopted the federal regulations applicable to this statute,[6] in which virtually the same language appears (*see* 42 C.F.R. § 483.15(a)(3)). Moreover, federal regulations provide that a qualifying nursing facility "must not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan, any gift, money, donation, or other consideration as a *precondition* of admission, expedited admission or continued stay in the facility." 42 C.F.R. § 483.15(a)(4) (emphasis added).

Here, Roberts' argument is that the freestanding promissory note she executed in favor of the appellee on February 12, 2019 qualified as a third-party guaranty of payment and therefore violated 42 C.F.R. § 483.15(a)(3) or (4). In support, she notes that her promissory note plainly reflects her promise to satisfy her mother's outstanding account; and, that the appellee's counsel stated in his opening remarks during the bench trial below that the appellee's "bookkeeping department brought in Ms. Roberts and had her, as the guarantor for her mother, sign paperwork to that effect, had her sign a promissory note at her agreement, and she's going to pay $750 a month on this arrearage."

---

[6] *See* 902 KAR 20:300 § (1)(a).

Notwithstanding, we disagree with Roberts' insinuation that the "illegality" of her promissory note was "easily perceptible, plain, obvious and readily noticeable,"[7] or that the law plainly indicates her "substantial rights"[8] were violated in this matter. Perhaps owing to her failure to raise this point below, there is no testimony or other evidence of record apart from Roberts' unsupported assertions indicating that her mother's admission or continued stay at the appellee's facility was *conditioned* upon Roberts executing the February 12, 2019 promissory note. At trial, she conceded that her execution of the promissory note was *voluntary*. Furthermore, while Roberts cites no caselaw interpreting these federal regulations – and Kentucky currently has no such precedent – other jurisdictions have concluded that under federal law, third parties could nevertheless "volunteer" to sign as guarantors of payment to nursing homes. *See, e.g.*, *Pioneer Ridge Nursing Facility Operations, L.L.C. v. Ermey*, 41 Kan. App. 2d 414, 419, 203 P.3d 4 (2009); *Manor of Lake City, Inc. v. Hinners*, 548 N.W.2d 573, 576 (Iowa 1996); *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 646, 58 Cal. Rptr. 2d 89 (1996) (reasoning that "[h]ad Congress intended to forbid third party guarantees under any circumstances, . . . it would have said so."). Due to the posture of this case, it is unnecessary for this Court to comment further upon the

---

[7] *Brewer*, 206 S.W.3d at 349.

[8] CR 61.02.

-9-

statutes and regulations discussed above. Suffice it to say that the "illegality" of

Roberts' promissory note is – due to the state of the law and record before us – less

than clear. Thus, if the circuit court committed any error in this regard, its error

was not *palpable*.

Next, Roberts argues the circuit court had no legal or factual basis to

enter judgment against her "with interest thereon at the rate of 12% per annum[.]"

She asserts the appropriate rate of interest should have been 6%. We agree. First,

the statute governing post-judgment interest, Kentucky Revised Statute (KRS)

360.040, mandated a 6% rate of interest. At all relevant times in this matter, it has

stated:

> (1) Except as provided in subsections (2), (3), and (4) of
> this section, a judgment, including a judgment for
> prejudgment interest, shall bear six percent (6%) interest
> compounded annually from the date the judgment is
> entered. A judgment may be for the principal and
> accrued interest.
>
> (2) A judgment for unpaid child support payments shall
> bear twelve percent (12%) interest compounded annually
> from the date the judgment is entered.
>
> (3) A judgment rendered on a contract, promissory note,
> or other written obligation shall bear interest at the
> interest rate established in that contract, promissory note,
> or other written obligation.
>
> (4) When a claim for unliquidated damages is reduced to
> judgment, such judgment may bear less interest than six
> percent (6%) if the court rendering such judgment, after a
> hearing on that question, is satisfied that the rate of

-10-

interest should be less than six percent (6%). All interested parties must have due notice of said hearing.

In sum, there are only three circumstances under which a court may deviate from the statutory post-judgment interest rate of 6% expressed in KRS 360.040. The first circumstance is where the claim is for unliquidated damages. KRS 360.040(4). The second is for unpaid child support payments. KRS 360.040(2). The claim here was for liquidated damages (*i.e.*, the unpaid balance of a promissory note); therefore, neither of those subsections were bases for awarding other than 6% post-judgment interest. The third circumstance is where "the interest rate [is] established in that contract, promissory note, or other written obligation." KRS 360.040(3). However, the February 12, 2019 promissory note that served as the basis of the circuit court's judgment did not "establish" *any* rate of interest. Accordingly, the circuit court lacked authority to specify a rate other than 6%. For parity of reasoning, *see Service Financial Company v. Ware*, 473 S.W.3d 98, 106 (Ky. App. 2015) (reasoning, under prior version of KRS 360.040, that a judgment for liquidated damages based upon a contract specifying no rate of interest could not deviate from the statutory post-judgment interest rate, which was then 12%); *see also Doyle v. Doyle*, 549 S.W.3d 450, 456 (Ky. 2018) ("All judgments bear interest. The amount of interest is mandated at the statutory rate unless the claim is unliquidated or interest is provided for in a separate written obligation.").

-11-

Additionally, "a judgment cannot properly adjudicate a matter not within the pleadings." *Kentucky Ret. Sys. v. Foster*, 338 S.W.3d 788, 798 (Ky. App. 2010). Here, *why* the circuit court provided a "12%" rate of interest remains an unanswered question.[9] In fact, even the *appellee* prayed for "the statutory rate of 6% per annum" in its complaint; it never asked for a different rate at any time during these proceedings; and, for at least two months *after* judgment had been entered, it appears the appellee remained unaware that the interest rate the circuit court had applied to its judgment was *not* 6%.[10] Indeed, even the appellee's motion to strike Roberts' brief makes no mention of this point; and the appellee has filed no brief otherwise addressing it.

A court cannot award relief that is prohibited by statute. And, issues of palpable error aside, "[i]t is elemental that a judgment must conform to the pleadings. Where the judgment grants relief beyond that prayed in a petition, it is void as to the excessive relief granted and may be collaterally attacked." *Belcher v. Hunt*, 248 S.W.2d 717, 718 (Ky. 1952). Accordingly, while Roberts did not preserve the issue below, it is nevertheless appropriate for this Court to address and

---

[9] While a prior version of the statute specified a rate of 12%, the version of KRS 360.040 that has been applicable at all relevant times in this litigation specifies a 6% rate of judgment interest and has been effective since June 29, 2017.

[10] Illustrating this point, on October 12, 2020, the appellee filed of record an "affidavit for order of wage garnishment," explaining the "amount due" on its August 18, 2020 judgment against Roberts was "22,797.26 @ 6% per annum from 8/18/20 until paid in full[.]"

order the correction of the unauthorized interest rate set forth in the circuit court's August 18, 2020 judgment.

## III. CONCLUSION

For the reasons set forth above, the judgment of the Bullitt Circuit Court is vacated insofar as the award of post-judgment interest of 12% is concerned, and this matter is remanded for entry of a judgment reflecting a rate of 6% post-judgment interest instead. In all other respects, we affirm.


ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Cynthia T. Griffin
Elizabethtown, Kentucky