No. 121,768

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN DOE H.B., an Individual,
*Appellee*,

v.

M.J., Individually and in his Capacity as a Priest at St. Matthew Parish, and
THE ROMAN CATHOLIC ARCHDIOCESE OF KANSAS CITY, KANSAS,
a Kansas Not for Profit Corporation,
*Appellants*.

SYLLABUS BY THE COURT

1.

Motions for judgment on the pleadings and motions for summary judgment test the legal tenability of the parties' claims and defenses. In the case of both motions, the moving party asserts that even if all the facts alleged or discovered were true, the movant would still be entitled to judgment as a matter of law. The difference between these requests lies in their scope: Motions for judgment on the pleadings, like motions to dismiss, are limited to a review of the pleadings themselves. Motions for summary judgment consider all the facts disclosed during the discovery process.

2.

When a defendant moves for judgment on the pleadings under K.S.A. 60-212(c), the court is called on to determine whether—assuming all the allegations in the petition are true—the plaintiff has stated a legally cognizable claim. Motions under K.S.A. 60-212(c) allow courts to dispose of claims as a matter of law when the pleadings frame the issues such that there are no real issues to be tried. But when the pleadings disclose factual issues that must be resolved, judgment under K.S.A. 60-212(c) is improper.

1

**3.**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. To prevail on a motion for summary judgment, a party must show that there is nothing a fact-finder could decide that would change the outcome of the case. If a party opposing a motion for summary judgment points to evidence that creates a genuine question for the fact-finder to resolve, summary judgment should be denied.

**4.**

In ruling on a summary-judgment motion, a district court views the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference drawn from the evidentiary record. Appellate courts apply this same framework on appeal, exercising de novo review.

**5.**

There are two types of statutory timeframes that may apply in a case: statutes of limitations and statutes of repose. A statute of limitations sets a time period in which a plaintiff may file a particular claim, beginning when a claim accrues and ending after a specified length of time. A statute of repose cuts off the time a claim may be asserted under any circumstances.

**6.**

K.S.A. 2019 Supp. 60-523 only applies to injuries suffered as a result of childhood sexual abuse that occurred within the 8 years before K.S.A. 2019 Supp. 60-523 became effective—that is, abuse that occurred on or after July 1, 1984.

7.

Courts' primary aim during statutory interpretation is to determine the legislature's intent in enacting the law in question. Courts do this by examining the statute's text, giving common words their ordinary meanings. But this analysis does not occur in isolation. Rather, courts must consider various related statutory provisions in context—*in pari materia*—and seek to reconcile those provisions into workable harmony.

8.

K.S.A. 2019 Supp. 60-523 applies broadly to any action for damages, so long as those damages flow from—were "suffered as a result of"—childhood sexual abuse. This includes negligence claims against an institution for injuries that result from those abusive acts.

9.

Kansas continues to follow rules of notice pleading. Thus, a petition must be broadly construed to determine whether, when read in the light most favorable to the plaintiff, the petition states a cognizable claim for relief.

10.

It is not the role of a court at summary judgment to assess witness credibility or weigh conflicting evidence. Rather, when genuine issues of material fact remain unresolved, summary judgment must be denied.

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed January 15, 2021. Affirmed and remanded.

*Chad E. Blomberg, Mara H. Cohara,* and *Elizabeth D. Hatting*, of Lathrop GPM LLP, of Kansas City, Missouri, *Carrie E. Josserand*, of the same firm, of Overland Park, and *Ross Henry Stewart*, of Stewart Law Office, LLC, of Overland Park, for appellants.

*Rebecca M. Randles*, of Randles Mata, LLC, of Kansas City, Missouri, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

WARNER, J.: Ordinarily, a plaintiff must assert tort claims within 1 to 2 years after he or she is injured. This timeframe prevents witnesses' memories and other evidence from going stale with the passage of time. But the Kansas Legislature has recognized that some types of claims—such as claims for injuries suffered by a minor—may warrant a longer timeline for filing suit.

This case involves a special statutory timeline for claims for damages suffered as a result of childhood sexual abuse. Under K.S.A. 2019 Supp. 60-523, a plaintiff may file suit up to 3 years after the person learns that his or her injury resulted from such abuse— even if that causation is determined years or decades later. This statute applies to injuries resulting from childhood abuse that occurred on or after July 1, 1984.

John Doe H.B. filed this suit in August 2017, alleging he was sexually abused by a Catholic priest more than 30 years ago. H.B.'s petition included claims against the former priest who committed the abuse and the Roman Catholic Archdiocese of Kansas City, Kansas, for failing to train and supervise the priest and failing to warn or protect H.B. After limited discovery, the defendants filed motions for summary judgment, alleging H.B.'s injuries occurred before July 1984 and that he filed his petition more than 3 years after he discovered them. The Archdiocese also claimed that the extended timeline in K.S.A. 2019 Supp. 60-523 only applied to claims against sexual perpetrators, not institutional defendants who did not personally commit the abuse.

The district court denied the defendants' motions, finding disputed issues of fact remained regarding when the last instance of sexual abuse occurred and when H.B. reasonably discovered that his injuries resulted from that abuse. The court also

4

interpreted K.S.A. 2019 Supp. 60-523 broadly to apply to any claims for damages caused by childhood sexual abuse, whether against the individual perpetrator or another defendant. We granted the defendants' application for an interlocutory appeal of these findings. After carefully considering the relevant statutes, the parties' arguments, and the record before us, we affirm the district court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2017, H.B. filed a petition against M.J., a former Catholic priest, individually and in his capacity as a priest for the Archdiocese in the 1980s. H.B. alleged that M.J. had engaged in a pattern of sexual abuse when M.J. was assigned to parishes in northeast Kansas. H.B.'s petition also asserted multiple claims against the Archdiocese, alleging that the church failed to train and supervise M.J., failed to warn H.B. of M.J.'s behavior and protect H.B., and attempted to cover up M.J.'s misconduct.

H.B.'s petition stated that M.J. had sexually abused H.B. multiple times at the rectory at St. Matthew's parish in Topeka, where M.J. lived. H.B. also alleged that M.J. abused him at the Topeka YMCA and the Athletic Men's Club, as well as on road trips to other churches and to M.J.'s parents' house. H.B. asserted that "[m]ultiple priests and lay persons within the Archdiocese knew or should have known that [M.J.] was sexually abusing children, including [himself]." H.B.'s petition alleged that this abuse occurred when he was approximately between the ages of 9 and 12 years old and between his fourth- and seventh-grade years.

In his petition, H.B. alleged that the years of abuse caused him "to develop various psychological coping mechanisms and symptoms of psychological distress, including great shame, guilt, self-blame and depression [that rendered him] unable [to] discover that he was a victim of sexual abuse." He stated that he had "repressed all memory of the

5

abuse until approximately late fall 2015 when news reports of sexual abuse by priests incardinated in Guam [where H.B. lives] hit the media."

Kansas statutes require any claim for damages, including claims of childhood sexual abuse, to be brought within certain time periods. Relevant here:

- K.S.A. 60-515 governs claims by people who are under a legal disability, which includes minors. This statute allows anyone who suffers an injury while he or she is under the age of 18 to bring a claim within 1 year of reaching the age of majority. K.S.A. 60-515(a). At the same time, no claims may be brought, as a matter of law, more than 8 years after the offending act. K.S.A. 60-515(a).

- The only exception to these time limitations are for claims of childhood sexual abuse, which are governed by K.S.A. 2019 Supp. 60-523. This statute states that claims resulting from such abuse must be brought within 3 years of when a person turns 18 or when the person reasonably should have discovered his or her injuries were caused by childhood sexual abuse, whichever is later. K.S.A. 2019 Supp. 60-523(a).

Unlike K.S.A. 60-515, K.S.A. 2019 Supp. 60-523 does not include an 8-year repose, or any repose, that extinguishes the claims to which it applies. But the extended limitations period in K.S.A. 2019 Supp. 60-523 only applies to claims that would not have been otherwise time-barred when that statute became effective on July 1, 1992. See K.S.A. 2019 Supp. 60-523(d). Practically speaking, this means that the longer limitation on abuse claims brought under K.S.A. 2019 Supp. 60-523 does not apply to offending acts that occurred before July 1, 1984, as those claims were extinguished as a matter of law under K.S.A. 60-515(a) before K.S.A. 2019 Supp. 60-523 became law.

6

The Archdiocese and M.J. moved to dismiss H.B.'s petition based on these statutes. The defendants asserted, based on the allegations in H.B.'s petition, that the alleged abuse must have ended in April 1984 (when H.B. turned 13) or May 1984 (at the end of his seventh-grade school year). Thus, H.B.'s claims were long outside the 1-year statute of limitations and 8-year statute of repose in K.S.A. 60-515. And based on the allegations in the petition, the defendants argued that H.B.'s claims were not saved by K.S.A. 2019 Supp. 60-523 because they had expired more than 8 years before that statute became effective. The Archdiocese further argued that even if H.B.'s petition was timely under K.S.A. 2019 Supp. 60-523, that statute only applied to claims against the person who actually perpetrated the abuse, not an institutional, nonperpetrator-defendant.

H.B. responded by explaining that because the memories of his abuse had long been suppressed, it was "very difficult for [H.B.] to determine the exact date that the abuse ended." Thus, the petition used intentionally vague language regarding the timeline of the sexual abuse; for example, he had not intended the approximate timeframes he alleged to indicate that the abuse ended on his last day of seventh grade or the day before his 13th birthday. H.B. agreed, however, that the dates alleged in his petition were "barely within the statute of repose" and conceded that K.S.A. 2019 Supp. 60-523 would not revive his claims if they were barred by K.S.A. 60-515(a)'s statute of repose.

The district court denied the motions to dismiss and ordered the parties to conduct limited discovery "to ascertain when these events could have possibly happened or the last date these events could have possible happened." The parties thus conducted discovery to determine two factual points:

(1) The last date of the childhood sexual abuse alleged in the petition—to ascertain whether it occurred before or after July 1, 1984, and thus whether H.B.'s claims were barred by K.S.A. 60-515's 8-year statute of repose.

7

(2) The date H.B. discovered (or reasonably should have discovered) that his injuries resulted from childhood sexual abuse—i.e., whether H.B.'s August 2017 petition was filed within K.S.A. 2019 Supp. 60-523's 3-year limitation period.

According to records produced by the Archdiocese, M.J. was formally assigned as a priest at St. Matthew's parish from July 1981 through June 1983. He was transferred to a parish in Overland Park for the following year and to a parish in Kansas City after that. At H.B.'s request, the Archdiocese also provided a log showing who presided over the funeral Mass of a local boy in May 1985; these records listed the then-pastor at St. Matthew's, and not M.J., as the celebrant.

At his deposition, H.B. described M.J.'s pattern of sexual abuse. H.B. testified that he remembered the abuse starting around when he served as an altar boy beginning in fourth grade. H.B. indicated that M.J.'s abusive acts continued over the course of the next few years at several locations, including St. Matthew's church and rectory in Topeka; at M.J.'s parents' house; at Savior of the World Seminary in Kansas City, Kansas; at a YMCA; and in the car while driving to Kansas City, Meriden, and Paxico, where M.J. would sometimes travel to celebrate Mass.

When asked if the sexual abuse ended after he was 12, H.B. replied "Oh, no. It still continued until I was in the eighth grade." H.B. explained that the abuse continued throughout the time he was a server at St. Matthew's, a role he performed until he got caught sneaking sacramental wine in eighth grade. H.B. indicated that it was M.J. who lectured him and the other altar boys who were caught in that act. And H.B. noted that although M.J. was assigned to another parish in 1983, he continued to intermittently celebrate or assist with Mass at St. Matthew's and help with various matters at H.B.'s high school.

8

Although H.B. admitted he had some trouble remembering specific instances of abuse, he claimed that recent counseling sessions had helped him to recall certain suppressed memories. H.B. recalled that one such instance occurred around Christmas 1984 when he was in eighth grade. Another occurred in May 1985 (at the end of his eighth-grade year), the day before a funeral of a local boy. H.B. indicated that although M.J. did not preside over the funeral Mass (as the Archdiocesan records showed), he was there to concelebrate and help distribute communion since so many people attended the funeral.

M.J. indicated in response to written discovery requests that he could not recall whether he was present at the funeral Mass in May 1985 or whether he assisted with other matters at St. Matthew's after he was assigned to a different parish in July 1983.

Inquiries into the date when H.B. discovered (or remembered) the alleged abuse also produced divergent details. H.B. recalled that a similar scandal was reported in Guam during the summer of 2014 and that he could not go anywhere without hearing about it. In his initial petition, H.B. noted that memories of his childhood trauma came flooding back to him in "approximately late fall 2015." But a report produced by the Archdiocese showed that H.B. called the Archdiocese on March 24, 2015, relaying his recollections of M.J. abusing him and demanding that something be done about it. And during his deposition, H.B. stated that he had spoken with someone at the Archdiocese in September 2014. (H.B. later noted that he may have misremembered the details of that call, since the Archdiocese's records showed it occurred in March 2015.) He also explained that although news reports of abuse began appearing in the summer of 2014, it "was not until late 2014"—not 2015, as he originally indicated in his petition—"that his own memories began flooding back."

After this limited discovery, the defendants each moved for summary judgment, again contending H.B.'s claims were time-barred. The Archdiocese alternatively moved

9

for judgment on the pleadings. Regardless of the procedural posture of these motions, both defendants essentially claimed that the timeframe set forth in H.B.'s petition was a binding admission as to when the alleged conduct occurred. Thus, the defendants argued, the district court should disregard any statements made by H.B. during discovery that were inconsistent with the statements in his petition—that the abuse occurred approximately between the ages of 9 and 12 and throughout his fourth- and seventh-grade years. The defendants asserted that based on these dates, all the actions H.B. alleged occurred before July 1, 1984, and thus were barred by K.S.A. 60-515 and K.S.A. 2019 Supp. 60-523(d)(1).

In its motion, the Archdiocese further asserted that though these timelines shifted some during discovery—and particularly during H.B.'s deposition—this shift was an effort to create a "feigned factual dispute." Thus, the Archdiocese asserted, H.B.'s account was not credible. Nevertheless, the Archdiocese conceded that if a jury were to believe H.B.'s new assertions regarding the last date of abuse and the date he reasonably remembered that abuse, H.B.'s claim would not be barred.

Alternatively, both defendants argued that H.B. had failed to bring suit within 3 years of his discovery of his injury from the childhood sexual abuse, as required by K.S.A. 2019 Supp. 60-523. And the Archdiocese renewed its argument, previously raised in its motion to dismiss, that K.S.A. 2019 Supp. 60-523 does not apply to institutional defendants.

After reading the parties' written arguments on these points and holding two hearings, the district court denied the defendants' motions. The court explained that a genuine factual dispute as to the last date of the alleged abuse by the priest precluded summary judgment on whether H.B.'s claims were barred by K.S.A. 60-515's 8-year repose. The court acknowledged that summary judgment might be appropriate "if the last date of the alleged abuse" was known as a matter of law. But that was not the case.

Rather, after the parties' limited discovery, the court found that there were "at least three different dates of the last alleged abuse"—those included in the petition, those discussed at the hearing on the motion to dismiss, and those H.B. described in his deposition.

The court noted that at the summary-judgment stage, it could not weigh this evidence to "conclusively establish the last date of the alleged abuse." Instead, that determination was

> "a question of fact which ultimately is to be decided by the fact-finder, which in this case would be the jury. This determination would be made upon or based upon all relevant information and evidence introduced at trial and probably, most importantly, would involve the credibility of the various witnesses; particularly that of the plaintiff. But that, again, would be for the fact-finder to decide."

The court similarly found the question whether H.B. filed his petition outside the 3-year statute of limitations in K.S.A. 2019 Supp. 60-523 to be inappropriate for summary judgment. Finally, the court interpreted K.S.A. 2019 Supp. 60-523 to apply to claims for damages from childhood sexual abuse generally—including against institutional and corporate defendants—not merely claims against the individual perpetrators of the abuse.

The district court then certified the three issues presented in the defendants' dispositive motions for interlocutory appeal under K.S.A. 2019 Supp. 60-2102(c):

(1) "whether the [8]-year statute of repose in K.S.A. 60-515(a) bars Plaintiff's claims against the Archdiocese and M.J.";

(2) "whether the special statute of limitations for 'childhood sexual abuse' in K.S.A. 60-523(a) applies to Plaintiff's claims against the Archdiocese as an entity"; and

11

(3) "whether the [3]-year statute of limitations in K.S.A. 60-523(a) bars Plaintiff's claims against the Archdiocese and M.J."

We granted the defendants' applications for interlocutory review.

DISCUSSION

We recognize, at the outset, that the petition in this case involves highly sensitive subject matter—raising questions of childhood sexual abuse by a former member of the clergy, suppressed memories, and details shadowed by the passing of decades. These difficult matters are understandably fraught with emotion for all parties involved. But the issues raised in the present appeal are legal in nature, calling us to consider the procedural posture of summary judgment and technical questions as to whether H.B. brought his claims within the timeframe permitted by law.

The Archdiocese and M.J. argue that H.B.'s claims are barred under K.S.A. 60-515 and K.S.A. 2019 Supp. 60-523. As a threshold matter, the Archdiocese asserts that the district court erred when it interpreted K.S.A. 2019 Supp. 60-523 broadly to apply to parties other than the individual perpetrators of childhood sexual abuse. And both defendants argue that the district court erred when it found a genuine factual dispute existed as to (1) the last date of the abuse H.B. has alleged and (2) when H.B. reasonably should have been aware of his injury.

Our review of these questions is constrained by the procedural posture in which they were presented to the district court—as motions for summary judgment and, in the case of the Archdiocese, an alternative motion for judgment on the pleadings. These motions test the legal tenability of the parties' claims and defenses. In the case of both motions, the moving party asserts that even if all the facts alleged or discovered were true, the movant would still be entitled to judgment as a matter of law. See K.S.A. 2019

12

Supp. 60-212(c) (judgment on the pleadings); K.S.A. 2019 Supp. 60-256 (summary judgment). The difference between these requests lies in their scope: Motions for judgment on the pleadings, like motions to dismiss, are "limited to a review of the pleadings" themselves. *Keiswetter v. State*, 304 Kan. 362, 368, 373 P.3d 803 (2016). Motions for summary judgment consider "all of the facts disclosed during the discovery process." 304 Kan. at 368.

When a defendant moves for judgment on the pleadings under K.S.A. 60-212(c), the court is called on to determine whether—assuming all the allegations in the petition are true—the plaintiff has stated a legally cognizable claim. *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 638, 355 P.3d 667 (2015). Motions under K.S.A. 60-212(c) allow courts to dispose of claims as a matter of law when the pleadings frame the issues such that there are no real issues to be tried. 302 Kan. at 638. But when the pleadings disclose factual issues that must be resolved, judgment under K.S.A. 60-212(c) is improper. See *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008). And when a motion for judgment on the pleadings asks a court to consider information outside of the pleadings—such as deposition testimony—the court must treat the motion as one for summary judgment. K.S.A. 60-212(d).

Summary judgment—that is, judgment without a trial—is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." K.S.A. 2019 Supp. 60-256(c)(2). To prevail on a motion for summary judgment, a party must show that there is nothing a fact-finder could decide that would change the outcome of the case. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). If a party opposing a motion for summary judgment points to evidence that creates a genuine question for the fact-finder to resolve, summary judgment should be denied. 289 Kan. at 900.

In ruling on a summary-judgment motion, a district court views the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference drawn from the evidentiary record. 289 Kan. at 900. On appeal, we apply the same framework as the district court, exercising de novo review. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). When we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1311, 429 P.3d 212 (2018); *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018). To the extent this analysis requires the examination, interpretation, and assimilation of Kansas statutes—here, K.S.A. 60-515 and K.S.A. 2019 Supp. 60-523— appellate courts exercise unlimited review. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Our analysis of these statutes starts from the recognition that there are two types of statutory timeframes that may apply in a case: statutes of limitations and statutes of repose. *Doe v. Popravak*, 55 Kan. App. 2d 1, 8, 421 P.3d 760 (2017). A statute of limitations sets a time period in which a plaintiff may file a particular claim, beginning when a claim accrues and ending after a specified length of time. 55 Kan. App. 2d at 8. In contrast, a statute of repose cuts off the time a claim may be asserted under any circumstances. Though the timeframe set by a statute of limitations may be tolled for equitable reasons or may not arise until some time after an injury occurs, a statute of repose sets a clock that runs from the date of the injury. See 55 Kan. App. 2d at 8. When the timeframe in a statute of repose expires, the claim is absolutely abolished as a matter of law, even if the claim has not yet accrued under the relevant statute of limitations. See *Shirley v. Reif*, 260 Kan. 514, Syl. ¶ 1, 920 P.2d 405 (1996).

K.S.A. 60-515(a) is both a statute of limitations and a statute of repose. It states that—except when a claim is brought under K.S.A. 2019 Supp. 60-523—a minor's claim

14

must be brought within 1 year of reaching the age of majority (a limitations period) or no more than 8 years after the occurrence of the act giving rise to the claim (a repose). *Popravak*, 55 Kan. App. 2d at 11. There is no question that H.B.'s claim was brought long after either statutory deadline passed. Thus, H.B.'s claims against the defendants may only proceed if they are permitted by the exception in K.S.A. 2019 Supp. 60-523.

K.S.A. 2019 Supp. 60-523(a) defines the timeframe during which actions for "damages suffered as a result of childhood sexual abuse" accrue. Such actions must be brought within 3 years of "the date the person attains 18 years of age" or "the date the person discovers or reasonably should have discovered that [his or her] injury or illness was caused by childhood sexual abuse," whichever is later. K.S.A. 2019 Supp. 60-523(a). Unlike K.S.A. 60-515, K.S.A. 2019 Supp. 60-523 does not include an absolute repose, or cutoff, for asserting these claims. But that statute only applies to claims that could be asserted on or after the date that statute became effective—July 1, 1992. K.S.A. 2019 Supp. 60-523(d); see *Popravak*, 55 Kan. App. 2d 1, Syl. ¶ 6 ("[T]he exception found in K.S.A. 60-523 has no application to a cause of action that has already been abolished by application of the statute of repose" in K.S.A. 60-515[a].); see also *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 669, 831 P.2d 958 (1992) ("The legislature cannot revive a cause of action barred by a statute of repose."). Thus, K.S.A. 2019 Supp. 60-523 only applies to injuries suffered as a result of childhood sexual abuse that occurred within the 8 years before K.S.A. 2019 Supp. 60-523 became effective—that is, abuse that occurred on or after July 1, 1984. See *Shirley*, 260 Kan. at 525-26.

The questions presented in this appeal involve multiple aspects of K.S.A. 2019 Supp. 60-523. The Archdiocese argues that K.S.A. 2019 Supp. 60-523 does not apply to claims against persons other than the actual perpetrators of childhood sexual abuse, and thus the 3-year limitations period in that statute does not apply to H.B.'s claims against the church. And both defendants argue that the facts of this case—in particular, the facts alleged in H.B.'s petition—show that H.B.'s claims are untimely in two respects:

15

(1) because they accrued more than 8 years before the enactment of K.S.A. 2019 Supp. 60-523 and (2) because they were brought more than 3 years after he discovered his injury resulted from the alleged abuse.

We conclude, for the reasons we discuss in detail below, that the district court did not err when it denied the defendants' requests for judgment at this stage in the proceedings. K.S.A. 2019 Supp. 60-523 governs actions for "damages suffered as a result of childhood sexual abuse," evincing a legislative intent that the statute be applied broadly to claims for those damages—whether brought against the individual perpetrator or a more remote actor. And unresolved factual questions render summary judgment inappropriate on the defendants' remaining arguments. We therefore affirm the court's ruling.

1. *The Kansas Legislature did not limit K.S.A. 2019 Supp. 60-523's application to claims against individual perpetrators of childhood sexual abuse.*

The Archdiocese argues that the plain language of K.S.A. 2019 Supp. 60-523 only applies to individuals who perpetrate childhood sexual abuse, not to institutions or other nonperpetrator-defendants. Thus, the Archdiocese asserts, the 3-year limitations period in that statute only applies to H.B.'s claims against M.J., and his claims against the Archdiocese were extinguished by the 8-year repose in K.S.A. 60-515(a).

To determine the scope of actions the legislature intended K.S.A. 2019 Supp. 60-523 to govern, we must interpret the language of that statute. Our primary aim during statutory interpretation is to determine the legislature's intent in enacting the law in question. *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 2, 374 P.3d 680 (2016). We do this by examining the statute's text, giving common words their ordinary meanings. 304 Kan. 755, Syl. ¶ 2. But this analysis does not occur in isolation. Rather, courts must consider various related statutory provisions in context—*in pari materia*—

16

and seek to reconcile those provisions into workable harmony. *Friends of Bethany Place, Inc. v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013).

Only when a statute's language is ambiguous will we resort to canons of construction or legislative history in construing the legislature's intent. *Nauheim*, 309 Kan. at 150. This limited role stems from the separation of legislative and judicial power within our system of government. An appellate court "merely interprets [the statutory] language" the legislature has chosen; we are "not free to speculate and cannot read into the statute language not readily found there." *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007).

With these principles in mind, we turn to the text of K.S.A. 2019 Supp. 60-523. The 3-year limitations period defined in K.S.A. 2019 Supp. 60-523(a) applies to "action[s] for recovery of damages suffered as a result of childhood sexual abuse." The statute goes on to define "childhood sexual abuse" as including a number of sexual crimes against minors:

> "'Childhood sexual abuse' includes any act committed against the person which act occurred when the person was under the age of 18 years and which act would have been a violation of any of the following:
>
> "(A) Indecent liberties with a child as defined in K.S.A. 21-3503, prior to its repeal, or subsection (a) of K.S.A. 2019 Supp. 21-5506, and amendments thereto; (B) aggravated indecent liberties with a child as defined in K.S.A. 21-3504, prior to its repeal, or subsection (b) of K.S.A. 2019 Supp. 21-5506, and amendments thereto; (C) aggravated criminal sodomy as defined in K.S.A. 21-3506, prior to its repeal, or subsection (b) of K.S.A. 2019 Supp. 21-5504, and amendments thereto; (D) enticement of a child as defined in K.S.A. 21-3509, prior to its repeal; (E) indecent solicitation of a child as defined in K.S.A. 21-3510, prior to its repeal, or subsection (a) of K.S.A. 2019 Supp. 21-5508, and amendments thereto; (F) aggravated indecent solicitation of a child as defined in K.S.A. 21-3511, prior to its repeal, or subsection (b) of K.S.A. 2019 Supp. 21-

17

5508, and amendments thereto; (G) sexual exploitation of a child as defined in K.S.A. 21-3516, prior to its repeal, or K.S.A. 2019 Supp. 21-5510, and amendments thereto; or (H) aggravated incest as defined in K.S.A. 21-3603, prior to its repeal, or subsection (b) of K.S.A. 2019 Supp. 21-5604, and amendments thereto; or any prior laws of this state of similar effect at the time the act was committed." K.S.A. 2019 Supp. 60-523(b)(2).

M.J. acknowledges that H.B.'s claims against him fall within the scope of this statute. But the Archdiocese points to two reasons why it believes the statute is limited to claims against individual perpetrators, not institutional defendants. First, it argues the legislature's decision to define childhood sexual abuse by way of a list of sex crimes—crimes that are committed by individuals—shows K.S.A. 2019 Supp. 60-523 applies only to suits against the person or persons who commit those crimes. Second, it claims that K.S.A. 2019 Supp. 60-523 "lacks the broad language that could potentially describe claims against a non-perpetrator or that are merely 'based' on the acts of the perpetrator."

The Kansas Legislature has defined limitations periods in multiple ways. At times, the legislature has assigned statutory timelines to specific tort claims. See, e.g., K.S.A. 60-513(a)(1) ("action[s] for trespass"); K.S.A. 60-513(a)(5) ("action[s] for wrongful death"); K.S.A. 60-514(a) ("action[s] for libel or slander"); K.S.A. 60-514(b) ("action[s] for assault, battery, malicious prosecution, or false imprisonment"). Other statutes apply time limitations to categories of claims, such as claims arising under contracts or statutes. See K.S.A. 60-511(1); K.S.A. 60-512. And sometimes, the legislature has chosen to apply a time limitation to particular plaintiffs (such as minors, incapacitated persons, or people asserting claims against an estate), regardless of the claims they assert. See K.S.A. 60-515; K.S.A. 59-2239.

K.S.A. 2019 Supp. 60-523 does not fall into any of these categories. Most notably, the legislature could have tied the limitations period in that statute to "actions for childhood sexual abuse," as it did for other tort actions, but it did not. Instead, the

18

statute's timeline applies to "action[s] *for recovery of damages suffered as a result of childhood sexual abuse.*" (Emphasis added.) K.S.A. 2019 Supp. 60-523(a).

Courts across the country have interpreted similar statutory language—that accords limitations periods to actions for *damages caused by* sexual abuse rather than actions for the abuse itself—to apply broadly to both perpetrator- and nonperpetrator-defendants. For example, *Werre v. David*, 275 Mont. 376, 913 P.2d 625 (1996), involved a Montana statute of limitations that applied to "'action[s] based on intentional conduct brought by a person for recovery of damages for injury suffered as a result of childhood sexual abuse.'" 275 Mont. at 383 (quoting Mont. Code Ann. § 27-2-216[1][b]). After analyzing this language, the Montana Supreme Court found that the statute did not apply only to abusive acts by sexual perpetrators. Instead, the court found that "an action is 'based on intentional conduct' if intentional sexual abuse is the starting point or foundation for the claim." 275 Mont. at 386. By extension, the Montana court held that the statute's extended limitations period applied to a negligence action against the plaintiff's mother—who was not the sexual perpetrator—for failure to protect the plaintiff against sexual abuse suffered when the plaintiff was a minor. 275 Mont. at 387.

Other courts considering limitations periods for actions for *damages caused by sexual misconduct*, rather than for the misconduct itself, have reached like conclusions. See *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of Southern U.S.*, 362 S.W.3d 656, 659 (Tex. App. 2011) (holding Texas' sexual-abuse limitations statute—which applies to an "'injury [that] arises as a result of conduct that violates [certain criminal offenses]'"—applies to nonperpetrators because there "is nothing in the statute to indicate that the legislature intended to limit this provision to causes of action against only the perpetrators of sexual assault"); *C.J.C. v. Corporation of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 706-07, 710, 985 P.2d 262 (Wash. 1999) (holding that Washington's statute, which governs "'[a]ll claims . . . based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse,'"

19

applies to negligence claims against a church for injuries caused by a priest's sexual abuse because "the negligence claims . . . stem from injuries suffered as a result of the intentional childhood sexual abuse").

The Archdiocese seeks to differentiate our analysis of K.S.A. 2019 Supp. 60-523 from the courts' discussions of the Montana, Texas, and Washington statutes in two primary ways. First, the Archdiocese asserts that causal phrase in the Kansas statute—applying to damages suffered "as a result of" abuse—is narrower than statutes involving damages "based on" abusive conduct and evinces the legislature's intent to restrict its application to claims against the actual perpetrator of a sexual crime. But we find this discrepancy to be a distinction without a difference. The phrases "as a result of" and "based on" both require a causal connection between the sexual abuse and the plaintiff's injuries. We do not interpret one phrase to be more or less narrow than the other. Accord *C.J.C.*, 138 Wash. 2d. at 710 (injuries suffered "as a result of intentional childhood sexual abuse" include negligence claims "'based on intentional conduct'").

Second, the Archdiocese argues that the "as a result of" language in the Kansas statute is more akin to language used in other states' statutes that courts have held apply only to intentional acts by sexual perpetrators. We disagree. Most notably, many of the statutes cited by the Archdiocese have a key distinction not present in K.S.A. 2019 Supp. 60-523: they specifically state that *the defendant* must have personally committed the abusive act. See *State ex rel. Heart of America Council v. McKenzie*, 484 S.W.3d 320, 326-28 (Mo. 2016) (holding Missouri's statute, which defines a claim for childhood sexual abuse as an "'act *committed by the defendant* against the plaintiff,'" only applies to claims against a sexual perpetrator); *Kelly v. Marcantonio*, 678 A.2d 873, 875-76 (R.I. 1996) (holding Rhode Island's statute, which defines childhood sexual abuse for limitations purposes as "'any act committed by *the defendant* against a complainant,'" only applies to actions against a sexual perpetrator).

20

If the Kansas Legislature wished to limit K.S.A. 2019 Supp. 60-523 to claims against sexual perpetrators, it could have used similar language indicating that the defendant must have committed the childhood sexual abuse that gave rise to the lawsuit. But it did not do so. We cannot add a restriction to the statute that the legislature did not include. See *Spencer Gifts*, 304 Kan. 755, Syl. ¶ 3. This is particularly true when we are considering statutes of limitations—remedial statutes that courts tend to interpret broadly. Accord *Turner and Boisseau, Chartered v. Lowrance*, 18 Kan. App. 2d 332, 337, 852 P.2d 517 (1993) (engaging in a "broad reading" of K.S.A. 60-519). And we note that the Kansas Supreme Court applied K.S.A. 2019 Supp. 60-523 in 1996 to a diocesan defendant. See *Shirley*, 260 Kan. at 527. Though the *Shirley* court declined to reach whether that statute properly applied in that case, as the issue was not properly preserved, the legislature did not alter the statutory language in the wake of that decision or otherwise react to the statute's application. See *State v. Hambright*, 310 Kan. 408, 419, 447 P.3d 972 (2019) ("'Legislative inaction may not be the strongest indicator of specific legislative purpose, . . . but it is *an* indicator.'").

We agree with the Archdiocese that only individuals, not institutions, can engage in the acts listed as childhood sexual abuse in K.S.A. 2019 Supp. 60-523(b). But K.S.A. 2019 Supp. 60-523 applies broadly to any action for damages, so long as those damages flow from—were "suffered as a result of"—childhood sexual abuse. This includes negligence claims against an institution for injuries that result from those abusive acts. The district court did not err when it concluded that H.B.'s claims against both M.J. and the Archdiocese, if otherwise timely, were subject to the limitations period in K.S.A. 2019 Supp. 60-523.

2. *The district court correctly found that unresolved factual disputes preclude summary judgment.*

The Archdiocese and M.J. also claim that even if K.S.A. 2019 Supp. 60-523 could apply in the abstract to both defendants, as we have concluded, the district court should

21

nevertheless have granted judgment in their favor. They argue that the facts pleaded in H.B.'s petition and revealed during the parties' limited discovery reveals that H.B.'s claims are untimely as a matter of law in two respects:

- That the last date of the alleged sexual abuse occurred before July 1, 1984, and thus his claims were extinguished by K.S.A. 60-515(a)'s statute of repose before K.S.A. 2019 Supp. 60-523 became effective.

- That H.B. discovered or reasonably should have discovered that his injuries arose from childhood sexual abuse before August 31, 2014—and thus outside K.S.A. 2019 Supp. 60-523's 3-year limitations period.

The district court found that these arguments turned on disputed factual questions and thus judgment as a matter of law—whether summary judgment or judgment on the pleadings—was improper. We examine these issues in the order the defendants present them on appeal.

    2.1.   *Unresolved factual disputes regarding the last date H.B. was sexually abused precluded summary judgment.*

As we have previously indicated, H.B. brought his claims in August 2017—over 30 years after the sexual abuse his petition alleges occurred and well beyond K.S.A. 60-515(a)'s limitations period and repose. The timeliness of his suit therefore turns on whether the exception in K.S.A. 2019 Supp. 60-523 applies. Thus, we must determine whether H.B.'s claim expired (under K.S.A. 60-515[a]'s 8-year statute of repose) before K.S.A. 2019 Supp. 60-523 became law on July 1, 1992. This means we must determine whether the uncontroverted facts conclusively demonstrate that the last instance of abuse occurred before July 1, 1984.

The defendants argue that the timeframe set forth in H.B.'s petition constituted binding judicial admissions that cannot be contradicted by later discovery. They contend that even though H.B. testified during his deposition about abusive acts that occurred around Christmas 1984 and in May 1985—dates that could render his claim timely under K.S.A. 2019 Supp. 60-523—he is bound by the statements in his petition that tend to show the alleged abuse ended by May 1984 (the end of his seventh-grade year). For this reason, the Archdiocese moved not only for summary judgment but also judgment on the pleadings.

We do not find the defendants' efforts to confine H.B.'s allegations to the narrowest reading of his petition persuasive. Kansas continues to follow rules of notice pleading. Thus, a petition must be broadly construed to determine whether, when read in the light most favorable to the plaintiff, it states a cognizable claim for relief. See *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013); see also K.S.A. 2019 Supp. 60-212. A party's petition is not intended to govern the entire course of the case. *Rector*, 287 Kan. at 232; *Pioneer Ridge Nursing Facility Operations, L.L.C. v. Ermey*, 41 Kan. App. 2d 414, 418-19, 203 P.3d 4 (2009).

It is true that in some limited instances, a party's admissions in his or her petition may be binding on later proceedings—particularly when "other parties to the action relied thereon and changed their position" because of them. *Arrowhead Const. Co. of Dodge City, Kansas, Inc. v. Essex Corp.*, 233 Kan. 241, Syl. ¶ 4, 662 P.2d 1195 (1983), *disapproved of on other grounds by Wichita Sheet Metal Supply, Inc. v. Dahlstrom and Ferrell Const. Co., Inc.*, 246 Kan. 557, 792 P.2d 1043 (1990). But no one has demonstrated this type of detrimental reliance here—either H.B.'s claim is timely and can proceed, or it is not.

Our Kansas Supreme Court has explained that allegations of fact included in a party's pleadings do not necessarily constitute judicial admissions when "'alternative and

hypothetical forms of statement of claims and defenses, regardless of consistency . . . lack the essential character of an admission.'" *Lytle v. Stearns*, 250 Kan. 783, 795-99, 830 P.2d 1197 (1992). The *Lytle* court observed that such allegations "'are directed primarily to giving notice and lack the essential character of an admission. To allow [such pleadings] to operate as admissions would render their use ineffective and frustrate their underlying purpose.'" 250 Kan. at 798-99 (quoting McCormick on Evidence § 265, 781-82).

Here, H.B.'s references in his petition to the "approximate[]" dates of his alleged sexual abuse lack the character of a judicial admission. Rather, they place the parties on notice generally as to when this abuse occurred, allowing the parties to explore the matter during discovery. And even if H.B. were confined to the timeline in his petition, the defendants' arguments would still fail at this stage in the proceedings. At the hearing on the defendants' motion to dismiss, H.B. clarified that "between fourth and seventh grade years" included the summer after seventh grade—not the end of the academic year. Accordingly, when H.B. is given the benefit of every reasonable inference drawn from the record, the last instance of abuse could have occurred as late as August 1984—within the statute of repose at the time of the enactment of K.S.A. 2019 Supp. 60-523. The statement in H.B.'s petition was not a binding admission that foreclosed further discovery. Thus, the district court did not err when it denied the Archdiocese's motion for judgment on the pleadings. See *Rector*, 287 Kan. at 232.

The defendants also argue that the court should have granted summary judgment because the Archdiocese's records produced during discovery conclusively demonstrate that M.J. was transferred from St. Matthew's parish in Topeka in June 1983. But the fact that M.J. was assigned to a different parish in 1983 does not foreclose the possibility that he sexually abused H.B. after that date. In fact, H.B. testified that M.J. periodically served as a visiting priest at St. Matthew's and at H.B.'s high school, even though he was assigned to a different parish. H.B. testified about one such instance in May 1985, when

24

M.J. assisted with the funeral Mass for a brother of one of H.B.'s friends, alleging M.J. again abused H.B. the day before that funeral.

M.J. and the Archdiocese attempt to cast H.B.'s recollection of these later episodes of abuse during discovery as self-serving testimony provided merely to evade the statutory timeline. But the defendants' questions regarding the credibility of H.B.'s testimony does not change the fact that the date of the last alleged abuse remained disputed. It is not the role of a court during summary judgment to assess witness credibility or weigh conflicting evidence. Giving H.B. the benefit of every reasonable inference drawn from the record, there remains a factual dispute about the date of the last abuse, and the district court correctly found that summary judgment was improper.

Because there remains a genuine issue of material fact as to when the last act of alleged sexual abuse occurred, the district court did not err when it denied the defendants' request for summary judgment based on K.S.A. 2019 Supp. 60-523(d).

2.2. *Unresolved factual disputes regarding the date H.B. reasonably discovered that his injuries were caused by childhood sexual abuse precluded summary judgment.*

Finally, the defendants contend that the district court should have granted their motions for summary judgment because "the uncontroverted material facts establish[]" that H.B. did not bring his claim within 3 years of reasonably discovering his injuries were caused by childhood sexual abuse. But again, the question as to when H.B. reasonably discovered his injuries were the result of childhood sexual abuse remains unresolved at this point in the proceedings.

Under K.S.A. 2019 Supp. 60-523(a), an action for the recovery of damages resulting from childhood sexual abuse must be brought within 3 years of (1) the minor's 18th birthday or (2) "the date the person discovers or reasonably should have discovered

that the injury or illness was caused by childhood sexual abuse," whichever is later. The contours of this discovery rule are further explained in K.S.A. 2019 Supp. 60-523(c), which states:

> "Discovery that the injury or illness was caused by childhood sexual abuse shall not be deemed to have occurred solely by virtue of the person's awareness, knowledge or memory of the acts of abuse. The person need not establish which act in a series of continuing sexual abuse incidents caused the injury or illness complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is a part of a common scheme or plan of sexual abuse."

In *Shirley*, 260 Kan. at 526, our Kansas Supreme Court noted that "K.S.A. 60-523 defines 'discovery' broadly to mean not just awareness of the abuse, but an understanding that the sexual abuse caused the plaintiffs' injuries."

H.B. filed his suit on August 31, 2017. Accordingly, for his suit to have been timely brought, H.B. must have reasonably discovered that his injuries were the result of childhood sexual abuse later than August 31, 2014.

In his petition, H.B. stated that he was "unable [to] discover that he was a victim of sexual abuse" and had "repressed all memory of the abuse until approximately late fall 2015 when news reports of sexual abuse by priests incardinated in Guam hit the media." But during H.B.'s deposition, he provided an earlier timeline for his discovery that his injuries arose from childhood abuse. The Archdiocese and M.J. point out that H.B. remembered calling the Archdiocese in September 2014 (though the Archdiocese produced a record showing that H.B. had actually called in late March 2015). And H.B. recalled first hearing about the sexual abuse cases in Guam in the summer of 2014, with the coverage of these cases eventually leading to his awareness of his own injuries.

26

According to the defendants, this timeline demonstrates that H.B. necessarily knew or reasonably should have known about the nature and cause of his injuries before the end of August 2014. We disagree. H.B. did not provide a date in which the Guam stories were reported or when he became aware of his own injuries. Rather, he explained in his deposition that this was a realization that occurred over time:

"I couldn't go anywhere without hearing about it on the news, hearing about it on the radio, reading about it [in] the newspaper, hearing people talk about it at restaurants about the cases that were going on there. And as we were talking, I'm just being bombarded with what had happened to me when I was a child."

And then at some later point, whether it was September 2014 or March 2015, H.B. called the Archdiocese because he "wanted to let them know that, Hey, they did something to me and I'm a victim and something had to be done about it."

The defendants apparently doubt the credibility of H.B.'s explanation. But again, summary judgment is not the time to resolve credibility questions. Instead, the district court was required to resolve all facts and reasonable inferences in the light most favorable to H.B. And our analysis is similarly limited on appeal. See *Patterson*, 307 Kan. at 621.

The fact-finder in this case might eventually agree with the defendants' arguments regarding H.B.'s testimony. Or some other evidence might arise during discovery that would conclusively pinpoint when the abuse took place. But it is not the role of a court at summary judgment—nor our role on appeal—to make credibility assessments or weigh conflicting evidence. And here, there remains a factual dispute about when H.B. did in fact discover that his injuries were caused by childhood sexual abuse. When reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Becker*, 308 Kan. at 1311.

If the jury determines that H.B. discovered his injuries were caused by childhood sexual abuse after August 31, 2014, then his suit is timely under K.S.A. 2019 Supp. 60-523. But if the jury finds that H.B.'s reasonable discovery occurred before that date, his claims are barred as a matter of law. Regardless of the fact-finder's ultimate determination, the district court correctly denied the defendants' motions for summary judgment.

Because of the conflicting evidence in the record, we cannot conclude, as a matter of law, that H.B.'s suit is untimely. We therefore affirm the district court's denial of the defendants' dispositive motions and remand the case for further proceedings.

Affirmed and remanded.